MILNER VOICE AND DATA, INC., Plaintiff

v.

Error TASSY, Nelson Rodriguez, and Eminent Telecom Solutions Corp., Defendant

No. 04–61248–CIV–MOORE.

United States District Court, S.D. Florida.

June 21, 2005.

Brian A. Wolf, Esq., Currie & Hancock, LLP, Fort Lauderdale, Christopher S. Enloe, Esq., Michelle W. Johnson, Esq., Daniel M. Shea, Esq., Nelson Mullins Riley & Scarborough, Atlanta, GA, for Plaintiff.

Stephen E. Nagin, Esq., Cathernine A. Van Horn, Esq., Nagin Gallop & Figueredo, Miami, for Defendant.

### *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Preliminary Injunction (DE # 2). A hearing was held on February 8–11 and 18, 2005, at which all parties were represented.

UPON CONSIDERATION of the memoranda and affidavits filed in support of and in opposition to Plaintiff's Motion, the testimony of witnesses and arguments of counsel during the hearing, and the other pertinent portions of the record, and being otherwise fully advised in the premises, and in lieu of Findings of Fact and Conclusions of Law, the Court enters the following Order GRANTING IN PART and DENYING IN PART Plaintiff's Motion for a Preliminary Injunction.

### BACKGROUND

The following are the undisputed facts in this case. Plaintiff Milner Voice & Data, Inc. ("Plaintiff" or "Milner") is a Georgia corporation with its principal place of business in Atlanta, Georgia. Compl. ¶ 1. Milner is engaged in the sale of business telephone systems, dictating systems and voice recording systems. *Id.* ¶ 9. Although Milner installs and services the equipment that it sells, *id.;* Resp. to Mot. for Prelim. Inj. at 2, Milner's installation and service business is not limited to telephone systems that it sells. Feb. 8, 2005 Hrg. Tr. at 206. Milner also routinely provides service to clients who purchased a telephone system from another source. Milner is engaged in such business throughout the State of Georgia, and throughout the State of Florida, including but not limited to Broward, Palm Beach, Martin, and Miami–Dade counties. Compl. ¶ 9; Rodriguez Decl. ¶ 9; Tassy Decl. ¶ 8.

Defendant Nelson Rodriguez was hired as a District Service Manager by Milner in either late 2001 or early 2002. Compl. ¶ 11; Resp. to Mot. for Prelim. Inj. at 3; Feb. 8, 2005 Hrg. Tr. at 200, 203. He signed an employment agreement with Milner on January 7, 2002. Compl., Ex. A.

As District Service Manager, Rodriguez supervised eight service technicians and one technician trainer and was responsible for Milner's Florida service department. Plaintiff's Ex. 11, ¶ 10; Feb. 8, 2005 Hrg. Tr. at 204. In the course of his job, Rodriguez became very familiar with the Milner client base. Feb. 8, 2005 Hrg. Tr. at 76–78. He spent approximately forty percent of his time in the office, and sixty percent out of the office at installations or service calls. Feb. 11, 2005 Hrg. Tr. Vol. 4–A, at 59–60, 80. His service activities were not limited to merely supervising other service employees; he personally worked on numerous upgrades and installations for Milner. Plaintiff's Exs. 30, 34, 76; Feb. 9, 2005 Hrg. Tr. at 59, 64–65, 71, 95–100; Feb. 10, 2005 Hrg. Tr. at 23–33, 169–70; Feb. 18, 2005 Hrg. Tr. at 22. Rodriguez

also provided pricing information to clients and upper management, and prepared sales orders for service agreements. Feb. 9, 2005 Hrg. Tr. at 100–108, Plaintiff's Exs. 56, 57, 58, 70, 78. Rodriguez's compensation was based, in part, on the profitability of Milner's Florida service department. Feb. 9, 2005 Hrg. Tr. at 40.

Defendant Errol Tassy was hired by Milner as the Branch Manager for its Pompano Beach, Florida office in March, 2004. Compl. ¶ 36; Resp. to Mot. for Prelim. Inj. at 4; Feb. 8, 2005 Hrg. Tr. at 23; Feb. 11, 2005 Hrg. Tr. at 81. Tassy signed a written employment agreement with Milner on March 12, 2004. Compl., Ex. C.

Tassy supervised approximately 25 employees, including sales representatives and service technicians, and was responsible for all aspects of Milner's Florida office. Plaintiff's Ex. 9, ¶ 9; Feb. 8, 2005 Hrg. Tr. at 19. Tassy's duties included business development, marketing to Milner's existing customers, and finding new customers for Milner. Feb. 11, 2005 Hrg. Tr. Vol. 4–A, at 47–48; Feb. 11, 2005 Hrg. Tr. at 83–85. Tassy was responsible for overseeing all of Milner's customers and prospects, and maximizing profitability. Feb. 8, 2005 Hrg. Tr. at 44. Tassy testified that he was hired to bring his telephone sales experience and to "partner some of the relationships I had built in the past with the phone system side of the house." Id. at 179. Tassy also met with individual sales representatives each week to discuss their customer prospects. Feb. 8, 2005 Hrg. Tr. at 148.

Defendant Eminent Telephone Solutions Corporation's ("Eminent") Articles of Incorporation were filed on May 24, 2004. Compl. ¶ 27; Resp. to Mot. for Prelim. Inj. at 6. According to Defendants' Response to the Motion for Preliminary Injunction, Eminent's business consists of installing, cabling, and servicing computer networks, and installing and servicing existing telecommunications systems, including cabling changes such as adding or moving telephone lines. Resp. to Mot. for Prelim. Inj. at 6. Eminent Telecom advertises in the yellow pages under the heading "Cable & Wire Installation—Voice & Data Systems"; its ad promotes Eminent Telecom's "Sales, Service, Installation, Leasing," and "Computer Network Wiring." Defendants' Ex. 4. Eminent Telecom's primary territory is in Miami–Dade, Broward, and Palm Beach counties, and overlaps with the territory of Milner's Pompano Beach office. Feb. 9, 2005 Hrg. Tr. at 7. Rodriguez is the President and a Director of Eminent. Compl. ¶ 27. Tassy is employed by Eminent. Resp. to Mot. for Prelim. Inj. at 6.

Non-party Inter–Tel, Inc. ("Inter–Tel") manufactures and sells the Inter–Tel Axxess business telephone system. Feb. 8, 2005 Hrg. Tr. at 201; Feb. 9, 2005 Hrg. Tr. at 6. Milner is a dealer of Inter–Tel products and sells, installs, cables, services, and repairs Inter–Tel Axxess telephone systems in Florida. Feb. 8, 2005 Hrg. Tr. at 64, 201.

In addition to selling business telephone systems through dealers such as Milner, Inter–Tel also sells telephone systems directly to clients through Inter–Tel branch offices. Peter Nicolaisen Dep. at 29. The Inter–Tel branch office located in Deerfield Beach, Florida competes with Milner with respect to the sale, installation, and service of Inter–Tel Axxess telephone systems to business customers. Amy Carpentieri Dep. at 77; Feb. 8, 2005 Hrg. Tr. at 64; Feb. 9, 2005 Hrg. Tr. at 7.

In the spring of 2004, Milner contacted Armellini Express Lines, Inc. ("Armellini") in an effort to sell Armellini an Inter–Tel Axxess telephone system. On May 19, 2004, after two meetings in May 2004, several Milner employees, including Tassy

and Rodriguez, met for several hours for a product demonstration at Milner with several representatives of Armellini. The Milner employees demonstrated the Inter-Tel Axxess telephone system. Feb. 11, 2005 Hrg. Tr. Vol. IV-A, at 33-39.

Tassy and Rodriguez knew that Armellini was an actively sought prospective customer of Milner because they had received pricing information about Milner's proposal and had actively participated in Milner's May 19, 2004 presentation to Armellini. On May 19, Rodriguez discussed the implementation process with the Armellini representatives, including the steps that Milner would take to perform the installation, and brought a written implementation plan to the presentation. Feb. 9, 2005 Hrg. Tr. at 118-19; Feb. 18, 2005 Hrg. Tr. at 97, 141-42. Tassy also spoke to the Armellini representatives. Feb. 8, 2005 Hrg. Tr. at 113-14; Feb. 11, 2005 Hrg. Tr. at 101-02.

On May 20, 2004, Milner fired Tassy. Compl. ¶ 49; Resp. to Mot. for Prelim. Inj. at 4. Rodriguez either quit or was fired that same day. Compl. ¶ 26; Resp. to Mot. for Prelim. Inj. at 4.

Armellini did not sign a contract with Milner and instead signed a contract to purchase the Inter-Tel Axxess telephone system from Inter-Tel's branch office on June 25, 2004. Nicolaisen Dep. at 33, 51; Levy Dep. at 60. This was the same telephone system that Milner had proposed to sell to Armellini. In early August, 2004 Tassy and Rodriguez helped install the Axxess telephone system that Inter-Tel had sold to Armellini. Rodriguez testified that Milner could have done this work, and that the work he did for Inter-Tel at Armellini was the same job that Milner had proposed to Armellini. Feb. 9, 2005 Hrg. Tr. at 4-5.

Plaintiff has filed a Complaint against Defendants, alleging that Defendants Tassy and Rodriguez violated several of the restrictive covenants contained in their aforementioned employment agreements (the "Employment Agreements"), used, disclosed and misappropriated Milner's trade secrets and confidential information, converted Milner's confidential proprietary and trade secret information, intentionally interfered with Milner's potential contractual relations, breached their fiduciary duties and duty of loyalty to Milner, and were unjustly enriched. *See generally* Compl.

In the instant motion, Plaintiff is seeking injunctive relief to enforce several of the restrictive covenants contained in the Defendants' Employment Agreements with Milner.

## DISCUSSION

### I. Standard for Preliminary Injunction

The standard for injunctive relief with respect to restrictive covenants requires plaintiff to plead and prove: (1) the existence of an enforceable contract, including a statutorily-defined "legitimate business reason" supporting each restrictive covenant; (2) defendants' intentional breach of the restrictive covenants; and (3) that plaintiff has no adequate remedy other than injunctive relief. *Sarasota Beverage Co. v. Johnson*, 551 So.2d 503, 508 (Fla.Dist.Ct.App.1989); Fla Stat. § 542.335. The existence of irreparable harm is presumed if intentional breach of an enforceable restrictive covenant is shown. *Id.*

### II. Analysis

The restrictive covenants set forth in Section 6 the aforementioned Employment Agreements are, in relevant part:

(a) During the term of employment with [Milner] or after termination thereof, whether such termination is at the insistence of Employee or [Milner],

Employee will not, except as otherwise expressly directed by [Milner];

(i) use or disclose, or permit any unauthorized person access to, any Trade Secrets of [Milner], or

(ii) for a period of two (2) years after such termination, use or disclose, or permit any unauthorized person access to, any Confidential Information belonging to [Milner], of which Employee acquired knowledge during and on account of Employee's relationship with [Milner];

(b) Upon request of [Milner] or upon termination of employment with [Milner], Employee will deliver to [Milner] all memoranda, notes, records, drawings, manuals or other documents, and all copies thereof, concerning Confidential Information or Trade Secrets that are in possession of Employee, whether made or complied by Employee or furnished to Employee by [Milner];

(c) For a period of one (1) year after termination of employment hereunder, whether such termination is at the insistence of [Milner] or Employee, Employee will not, directly or indirectly, on Employee's own behalf or for others, conduct activity that is competitive with the activities the Employee conducted for [Milner] within the geographic area or areas where the Employee conducted such activities at or within a two (2) year period of the time prior to termination; provided, however, that if the term of employment hereunder should end prior to the expiration of one (1) year from the initial date of Employee's current continuous period of employment with [Milner], whether such employment was commenced pursuant to the Agreement or prior to the execution hereof, then the foregoing one (1) year period restriction shall be reduced to a period equal to the number of days of such current continuous period of employment; provided further, that nothing contained herein shall prevent Employee from engaging in any activity that is not competitive with the business then being conducted by [Milner].[1]

. . . . .

(e) For a period of two (2) years after termination of employment hereunder, whether such termination is at the insistence of [Milner] or Employee, Employee will not solicit or accept or attempt to solicit or accept, directly or by assisting others, any business from any of [Milner's] customers, including actively sought prospective customers, with whom Employee dealt or about whom Employee obtained confidential information as a result of Employee's association with [Milner] during his/her employment for purposes of providing products or services that are competitive with those provided by [Milner].

(f) For a period of two (2) years after termination of employment hereunder, whether such termination is at the insistence of [Milner] or Employee, will not recruit or hire, or attempt to recruit or hire, directly or by assisting others, any Employee of [Milner] or its affiliates.

. . . . .

*See* Compl., Exs. A ¶ 6, C ¶ 6. Although Plaintiff originally sought a preliminary injunction to enforce all of the above restrictive covenants, during the preliminary

1. By the terms of Tassy's Employment Agreement with Milner he is only prohibited from competing with Milner for the same amount of time that he was actually employed by Milner, which was 69 days.

injunction hearing Plaintiff notified the Court that it is no longer seeking an injunction for the non-disclosure covenants found in ¶¶ 6(a) & (b) of the Employment Agreements. *See* Feb. 8, 2005 Hrg. Tr. at 46–47.

The Court notes that on the final day of the five-day preliminary injunction hearing, Plaintiff's counsel sought to renew its request for this Court to enter an injunction regarding the non-disclosure restrictive covenants. *See* Feb. 18, 2005 Hrg. Tr. at 152–58. During Plaintiff's counsel's cross examination of Defendant Rodriguez, counsel questioned Rodriguez about Defendants' Exhibits 12B and 13. Plaintiff's counsel misconstrued the testimony of Defendant Rodriguez, and asserted that Rodriguez stated that he had received Defendants' Exhibits 12B and 13 while at Milner, and had taken that document when he was terminated from Milner. *Id.* at 155. However, a review of the record indicates that Defendant Rodriguez testified that the exhibits came from the Intertel website, and that he got those documents from the website after he left Milner. *See id.* at 156–58. Further, the confidentiality stamps on the exhibits did not come from Milner, but were placed on the exhibits by Defendants' counsel prior to production to Plaintiff during the course of this litigation. *Id.* at 156. Plaintiff has presented no evidence that Defendants breached the non-disclosure restrictive covenants of their Employment Agreements. Accordingly, Plaintiff's Motion for Preliminary Injunction with respect to the non-disclosure restrictive covenants set forth in ¶¶ 6(a) & (b) of the Defendants' Employment Agreements is denied, as Plaintiff has not adequately pled and proven that Defendants intentionally breached these restrictive covenants.

Plaintiff also seeks a preliminary injunction to enforce the restrictive covenant in

¶ 6(f) Defendants' Employment Agreements. *See* Mot. for Prelim. Inj. ¶ 3. However, during the five-day preliminary injunction hearing, Plaintiff's counsel did not present any argument or evidence to support its request for a preliminary injunction with respect to this restrictive covenant. Therefore, the only evidence on the issue is contained in affidavits, deposition testimony and discovery responses. The Milner employee that Rodriguez allegedly solicited was Derrick Miller. Dreyer Aff., ¶ 29; Dreyer Depo. at 56–58, 91. Miller did not testify during the preliminary injunction hearing, did not submit an affidavit and was not deposed. Accordingly, Plaintiff's Motion for a Preliminary Injunction as to the restrictive covenant set forth in ¶ 6(f) of the Employment Agreements is denied, as it has not pled and proven that Defendants intentionally breached this restrictive covenant.

This Court will now analyze Plaintiff's Motion for Preliminary Injunction as to the restrictive covenants set forth in ¶¶ 6(c) & (e) of the Defendants' Employment Agreements.

The Employment Agreements at issue are governed by Fla. Stat. § 542.335, which applies to restrictive covenants entered into after July 1, 1996. Fla. Stat. § 542.335(3). Fla. Stat. § 542.335(1)(h) provides:

> A court shall consider a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.

As the statute requires, the covenants at issue must be construed in favor of provid-

ing reasonable protection to Plaintiff's legitimate business interests.

### A. Non–Compete Restrictive Covenant

#### 1. Non–Compete Clause is Enforceable Against Defendant Rodriguez

Pursuant to Florida Statutes § 542.335(1), the Court may enforce "contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business . . . ." Florida Statutes § 542.335(1)(a) dictates that "[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." Moreover, pursuant to Florida Statutes § 542.335(1)(b), "[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant."

Section 542.335 defines the term "legitimate business interest" as including, but is not limited to: (1) trade secrets, as defined in Florida Statutes § 688.002(4); [2] (2) valuable confidential business or professional information that otherwise does not qualify as trade secrets; (3) substantial relationships with specific prospective or existing customers, patients, or clients; (4) customer, patient, or client goodwill associated with an ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress," a specific geographic location, or a specific marketing or trade area; and (5) extraordinary or specialized training. Fla. Stat. § 542.335(b). "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unen-

forceable." *Id.* Florida Statutes § 542.335(1)(c) provides that "[a] person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interest justifying the restriction."

■ First, this Court finds that the restrictive covenant for non-competition contained in Defendants' Employment Agreements is reasonable in time, area, and line of business. The non-competition clause is limited to a one-year duration for Defendant Rodriguez, and a sixty-nine day duration for Defendant Tassy. *See* Compl., Exs. A ¶ 6(c), C ¶ 6(c). Further, the non-competition covenant is limited to the "geographic area or areas where the [Defendants] conducted such activities at or within a two (2) year period of time prior to termination." *See id.* Exs. A ¶ 6(c), C ¶ 6(c). Finally, the non-competition clause is limited to restricting "activity that is competitive with the activities the [Defendants] conducted for [Milner] . . ." *See id.* Therefore, this non-compete restrictive covenant is reasonable in time, area, and line of business.

Second, pursuant to Florida Statutes § 542.335(1)(a), the restrictive covenant is "set forth in a writing signed by the person against whom enforcement is sought." Here, there is no dispute regarding whether Defendants signed the Employment Agreements.

■ Third, Plaintiff has sufficiently plead and proven "the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat.

**2.** Florida Statute § 688.002(4) defines a trade secret as: "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

§ 542.335(1)(b). Based on the evidence presented during the five-day hearing, Plaintiff has shown that it has legitimate business interests, including: (1) substantial relationships with specific prospective or existing customers, patients, or clients; and (2) extraordinary or specialized training of Defendant Rodriguez.

■ Defendants have argued that in order to have a protectable interest in specific prospective or existing customer relationships, Milner must prove that the Defendants themselves had a substantial relationship with the specific customers at issue. As discussed in this Court's Orders dated February 25 and April 12, 2005, the Court does not accept Defendants' argument Relevant case law indicates that the proper inquiry focuses on the relationship between an employer and its prospective and existing customers; an employer need not prove that its former employee himself had a substantial relationship with any particular customer. Here, Defendants were responsible for all of Milner's Florida client relationships, and had access to confidential information regarding all of these clients. Moreover, with respect to Milner's prospective client Armellini, Defendants were participants in Milner's efforts to close the sale to Armellini.

In addition, as to Defendant Rodriguez, Plaintiff has also pled and proven a legitimate business interest in the extraordinary or specialized training provided by Plaintiff to Rodriguez. Milner provided Rodriguez with specialized training on products it marketed, including Inter–Tel, Lanier, and Mercom products. Before beginning employment with Milner, Rodriguez had no experience or training on Inter–Tel products, including the Axxess telephone system, nor did he have training or experience on the other telephone systems or business products that Milner markets, including Lanier, Mercom, and ESI products. Feb. 8, 2005 Hrg. Tr. at 200–01. Rodriguez was trained and became an Inter–Tel certified technician while employed by Milner. *Id.* at 203; Feb. 10, 2005 Hrg. Tr. at 113–15; Plaintiff's Ex. 3. Milner paid for Rodriguez to attend a two-week Inter–Tel training school in Phoenix, Arizona in February and March, 2002, and a second two-week Inter–Tel training school in Phoenix in July, 2003. Milner paid for Rodriguez to attend the Inter–Tel national meeting in Phoenix for four days in January, 2004. Milner also paid for Rodriguez to attend ten days of Lanier VXP training in Atlanta, Georgia in January, 2003 and five days of Mercom Logger training in Newark, New Jersey in August, 2003. Milner also paid for Rodriguez to attend four days of computer and systems training at Milner's corporate office in Atlanta in January, 2003. The total cost for tuition, expenses, and Rodriguez's salary and benefits for all of these courses was $18,669.84. Feb. 10, 2005 Hrg. Tr. at 105–09; Feb. 18, 2005 Hrg. Tr. at 209–11; Plaintiff's Exs. 41, 84. Therefore, Milner has pled and proven that it had a legitimate business interests to justify the non-competition restrictive covenant.

### 2. *Defendant Rodriguez Intentionally Breached the Non–Compete Clause*

■ Defendants' Employment Agreements contain a restrictive covenant that provides, in relevant part, that Defendant Rodriguez, for a period of one year after termination of employment with Milner, and Defendant Tassy, for a period of sixty-nine days after termination of employment with Milner, will not, directly or indirectly, on Defendants' own behalf or for others, conduct activity that is competitive with the activities Defendants conducted for Milner within the geographic area or areas where Defendants conducted such activities at or within a two year period of the

time prior to termination. Nothing contained in this covenant shall prevent either Rodriguez or Tassy from engaging in activity that is not competitive with Milner's business. *See* Compl., Exs. A ¶ 6(c), C ¶ 6(c).

As this Court found in its February 25, 2005 Order granting in part and denying in part. Defendants' Motion to Dismiss, Plaintiff cannot enforce this restrictive covenant against Defendant Tassy. That covenant provides that if the term of employment is less than one year, the restriction of that covenant shall be reduced to a period equal to the number of days of employment. Because Milner only employed Tassy for sixty-nine days, the covenant was only enforceable against Tassy for sixty-nine days after his term of employment, which ended on May 20, 2004. Therefore, this restrictive covenant expired on July 29, 2004. In a footnote to its Motion for Preliminary Injunction, "Milner recognizes that the term of Tassy's no-compete covenant has expired. Under the circumstances, however, Milner asks that the period of Tassy's no-compete provision be extended." Mem. in Support of Mot. for Prelim. Inj. at 12 n. 2. Milner provides no legal or factual basis for such an extension. To the extent that Milner's Motion for Preliminary Injunction seeks to enjoin Tassy from directly or indirectly conducting activity that is competitive with Milner's activities, the motion is denied.

 As for Defendant Rodriguez, Plaintiff has demonstrated that Defendant Rodriguez intentionally breached the enforceable non-compete restrictive covenant in his Employment Agreement. The covenant set forth in Section 6(c) of Defendants' Employment Agreements is reasonably necessary to protect Plaintiff's legitimate business interests set forth above. This covenant protects Milner's substantial investment in the training Mil-

ner provided to Rodriguez, as well as Milner's relationships with its clients.

Rodriguez has violated Section 6(c) by performing installation, cabling, repair and service work on Inter–Tel Axxess and ESI telephone systems. Plaintiff's Exs. 19, 20, 21, 28, 29. This is the same type of work that Rodriguez performed as Milner's District Service Manager, and is competitive with the activities he conducted for Milner within the geographic area or areas where he conducted such activities.

Specifically, Rodriguez sent various letters and e-mails in May and June, 2004 to attempt to obtain referrals for Eminent, including an e-mail to Ron Levy of Inter–Tel on May 24, 2004. Plaintiff's Ex. 5. On or about May 27, 2004, Rodriguez met with Inter–Tel to discuss the possibility of Eminent becoming a subcontractor to Inter–Tel's Deerfield Beach office for the installation and service of Inter–Tel equipment sold directly to customers. Feb. 9, 2005 Hrg. Tr. at 10; Neipling Depo. at 31–34. Following that meeting, Inter–Tel and Rodriguez entered into an Inter–Tel Subcontractor Agreement. Feb. 9, 2005 Hrg. Tr. at 8, 20; Feb. 18, 2005 Hrg. Tr. at 87; Neipling Depo. at 34, 40–41. Inter–Tel directly competes with Milner with respect to the sale, installation, cabling, service, and repair of the Inter–Tel Axxess telephone system.

Rodriguez informed Inter–Tel that Eminent would not accept any assignments for Inter–Tel customers with prior relationships with Milner, and Eminent refused at least one assignment for an Inter–Tel customer with a prior relationship with Milner. Feb. 18, 2005 Hrg. Tr. at 88–90; Neipling Depo. at 52–53. However, in early August 2004, Tassy and Rodriguez helped install the Axxess telephone system that Inter–Tel had sold to Armellini in Miami. Rodriguez visited the Armellini site at least five times. Feb. 9, 2005 Hrg.

Tr. at 89–91. Performing pre-installation site visits was also part of Rodriguez's job for Milner. *Id.* at 92. Eminent billed Inter–Tel $4,680 for this work, which included eight to ten hours of installation work performed by Tassy on behalf of Eminent. Plaintiff's Ex. 9, ¶ 31; Plaintiff's Ex. 20; Feb. 8, 2005 Hrg. Tr. at 118; Feb. 9, 2005 Hrg. Tr. at 2–5, 30–31. Rodriguez testified that Milner could have done this work, and that the work he did for Inter–Tel at Armellini was the same job that Milner had proposed to Armellini. Feb. 9, 2005 Hrg. Tr. at 4–5. When Rodriguez headed Milner's Florida Service Department, he not only supervised all of Milner's other service technicians, but also personally installed, cabled, serviced, and repaired the Inter–Tel Axxess system for Milner's clients.

The installation, cabling, service and repair work that Defendant Rodriguez performs for customers with ESI telephone systems likewise violates Section 6(c) of the Employment Agreements. Defendants admit that Milner markets, installs, cables, services and repairs ESI telephone systems and that Rodriguez personally performed this work while he was Milner's Florida Service Manager. Further, Eminent directly competes with Milner for this work, and has performed service and repair jobs for a number of Milner clients with ESI systems including Alexander Insurance and Home Wealth. Plaintiff's Exs. 19, 21.

Plaintiff has adequately pled and proven that Defendant Rodriguez intentionally breached the non-compete restrictive covenant contained in his Employment Agreement with Milner. In addition, this Court finds that Plaintiff has no adequate remedy other than injunctive relief, as any continued breach of this restrictive covenant could possibly damage Milner's relationships with its clients, which is a legitimate business interest that this restrictive covenant seeks to protect.

### 3. *There is a Substantial Threat of Irreparable Harm.*

■ As noted above, Florida Statutes section 542.335(1)(j) provides, in relevant part, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Defendant Rodriguez signed his employment contract with Milner, and this contract is governed by Florida Statutes § 542.335. Therefore, as the Defendants concede, Milner is entitled to the presumption of irreparable injury in trying to enforce the restrictive covenants of Defendant Rodriguez's employment agreement. *See* Resp. to Prelim. Inj. at 9.

Accordingly, Plaintiff's Motion for Preliminary Injunction with respect to ¶ 6(c) of Defendant Rodriguez's Employment Agreement is granted, and Plaintiff's Motion for Preliminary Injunction with respect to ¶ 6(c) of Defendant Tassy's Employment Agreement is denied.

### B. *Non–Solicitation Restrictive Covenant*

### 1. *Non–Solicitation Clause is Enforceable*

Pursuant to Florida Statutes § 542.335(1)(b), "[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." *Id.* Florida Statutes § 542.335(1)(c) provides that "[a] person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate

business interest or interest justifying the restriction."

■ First, similar to the non-competition clause, the non-solicitation clause of the Defendants' Employment Agreements is reasonable. The non-solicitation clause is restricted to a two-year period for both Defendants. *See id.* Exs. A ¶ 6(e), C ¶ 6(e). In addition, the clause only prohibits solicitation of "[Milner's] customers, including actively sought customers, with whom the [Defendants] dealt or about whom the [Defendants] obtained confidential information as a result of [Defendants] association with [Milner] . . ."

Second, pursuant to Florida Statutes § 542.335(1)(a), the non-solicitation restrictive covenant is "set forth in a writing signed by the person against whom enforcement is sought." Here, there is no dispute regarding whether Defendants signed the Employment Agreements.

■ Third, Plaintiff has sufficiently plead and proven "the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat. § 542.335(1)(b). Based on the evidence presented during the five-day hearing, Plaintiff has shown that it has legitimate business interests, including Milner's substantial relationships with specific prospective or existing customers, patients, or clients to justify the non-solicitation restrictive covenant.

### 2. *Defendant Tassy Intentionally Breached the Non–Solicitation Clause*

■ Defendants' Employment Agreements contain a restrictive covenant that provides that "[f]or a period of two (2) years after termination of employment hereunder, whether such termination is at the insistence of [Milner] or Employee, Employee will not solicit or accept or attempt to solicit or accept, directly or by assisting others, any business from any of [Milner's] customers, including actively sought prospective customers, with whom Employee dealt or about whom Employee obtained confidential information ·as a result of Employee's association with [Milner] during his/her employment for purposes of providing products or services that are competitive with those provided by [Milner]." *See* Compl., Exs. A ¶ 6(e), C ¶ 6(e).

Plaintiff has shown that Section 6(e) of Defendants' Employment Agreements is reasonably necessary to protect Plaintiff's legitimate business interests, specifically, Milner's substantial relationships with specific prospective or existing customers, patients, or clients. .

Defendant Tassy violated Section 6(e) by soliciting Milner's clients, such as Alexander Insurance. In September, 2004, Tassy solicited Alexander Insurance for Eminent. Feb. 9, 2005 Hrg. Tr. at 36–38; Feb. 18, 2005 Hrg. Tr. at 102–04; Feb. 18, 2005 Hrg. Tr. at 184–86; Plaintiff's Exs. 19, 85, 86. Alexander Insurance had purchased two ESI telephone systems from Milner in September, 2003, and wanted to move one ESI system to another location. Tassy knew that Alexander Insurance was an existing Milner customer when he solicited its business, as Alexander Insurance's president Jonathan Rausch confirmed in his hearing testimony. Feb. 18, 2005 Hrg. Tr. at 106–08. Milner also submitted a bid for this work, but Eminent Telecom underbid Milner and was awarded the job. *Id.* at 103–04, 115. Tassy helped Rodriguez do the work for Alexander Insurance. Feb. 8, 2005 Hrg. Tr. at 101–02.

Plaintiff has adequately pled and proven that Defendant Tassy intentionally breach-

ed the non-solicitation restrictive covenant contained in his Employment Agreement with Milner. In addition, this Court finds that Plaintiff has no adequate remedy other than injunctive relief, as any continued breach of this restrictive covenant by Tassy could possibly damage Milner's relationships with its clients, which is a legitimate business interest that this restrictive covenant seeks to protect. Accordingly, Plaintiff's Motion for Preliminary Injunction with respect to ¶ 6(e) of Defendant Tassy's Employment Agreement is granted.

### 3. *There is a Substantial Threat of Irreparable Harm*

Defendant Tassy signed his employment contract with Milner, and this contract is governed by Florida Statutes § 542.335. Therefore, as the Defendants concede, Milner is entitled to the presumption of irreparable injury in trying to enforce the restrictive covenants of Defendant Tassy's employment agreement. *See* Resp. to Prelim. Inj. at 9.

■■■ Plaintiff asserts that Rodriguez violated Section 6(e) by accepting from Tassy, on behalf of Eminent Telecom, competitive work for Home Wealth and Alexander Insurance, who he knew to be Milner clients, with whom he had dealt, and about whom he obtained confidential information as a result of his association with Milner. In addition, Plaintiff claims that Rodriguez further violated Section 6(e) by accepting installation work from Inter–Tel for Armellini. Plaintiff reasons that Tassy's solicitations on behalf of Eminent Telecom are imputed to Rodriguez and Eminent Telecom. However, Plaintiff has not presented binding case law on this issue. Moreover, Plaintiff has failed to prove that Rodriguez breached ¶ 6(e) of his Employment Agreement. Accordingly, while Rod-

riguez is still contractually bound by ¶ 6(e) of his Employment Agreement, this Court will not enter an injunction against Rodriguez under that restrictive covenant.

Accordingly, Plaintiff's Motion for Preliminary Injunction with respect to ¶ 6(e) of Defendant Tassy's Employment Agreement is granted, and Plaintiff's Motion for Preliminary Injunction with respect to ¶ 6(e) of Defendant Rodriguez's Employment Agreement is denied.

### CONCLUSION

UPON CONSIDERATION of the Motion, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Preliminary Injunction is granted in part and denied in part as follows:

(1) Defendant Rodriguez is hereby preliminarily enjoined from directly or indirectly (the term "indirectly" to include managing, advising, training or helping anyone acting in concert with Defendants, including employees of Inter–Tel, Inc., with respect to the conduct proscribed herein), on his own behalf or for others, including but not limited to Inter–Tel, Inc., installing, servicing or selling products that are competitive with Milner's business telephone systems in the State of Florida;

(2) Defendant Tassy is hereby preliminarily enjoined from soliciting or accepting or attempting to solicit or accept, directly or by assisting others, any business from any of Milner's customers, including actively sought prospective customers, with whom Defendant Tassy dealt or about whom Defendant Tassy obtained confidential

information during their association with Milner for purposes of providing products or services that are competitive with those provided by Milner;

(3) This preliminary injunction shall remain in effect until resolution of this action;

(4) All other portions of Plaintiff's Motion for Preliminary Injunction are DENIED;

(5) Plaintiff's Motion for Permanent Injunction is DENIED WITHOUT PREJUDICED, with leave to renew following the resolution of this action.