698 So.2d 339 (1997)
Dennis K. KING, M.D., P.A., Appellant,
v.
John G. JESSUP, M.D., Appellee.
No. 96-3309.
District Court of Appeal of Florida, Fifth District.
August 15, 1997.
Michael R. Riemenschneider of O'Brien, Riemenschneider, Kancilia & Lemonidis, P.A., Melbourne, for Appellant.
Stewart B. Capps of Steward B. Capps, P.A., Indialantic, for Appellee.
PER CURIAM.
Appellant, Dennis K. King, M.D., and his professional association, appeal the trial court's denial of their motion for a temporary injunction to enforce a covenant not to compete against appellee, John G. Jessup, M.D.
Dr. King, who had an established medical practice, employed Dr. Jessup who had just completed his medical studies. The written employment agreement executed by them included a covenant which prohibited Dr. Jessup from beginning a competitive medical practice for two years within a specified area of Brevard County, Florida, after separating from Dr. King's practice. The covenant also prohibited Dr. Jessup from exercising staff privileges at Holmes Regional Medical Center and Palm Bay Hospital or any other facility at which Dr. Jessup had staff privileges in the area specified.
Following Dr. Jessup's announcement on June 21, 1996, that he would be leaving the parties' medical practice, Dr. King sought temporary injunctive relief enjoining Dr. Jessup from violating the parties' agreement.
Dr. Jessup testified that he joined Dr. King's pulmonary medicine specialty practice upon finishing his medical training and that he recently began a new medical practice about a block away from Dr. King's practice. Dr. Jessup acknowledged that he was now servicing patients who he had previously cared for while employed by Dr. King. He insisted, however, that he took no steps to directly solicit these patients, and that the only actions he took with respect to keeping his former patients was to inform them that he was located at a new address. Dr. Jessup further testified that he had never used any of Dr. King's files, patient lists, or trade secrets, and that, further, Dr. King had played no significant role in obtaining staff *340 privileges for him at Holmes Regional Medical Center or Palm Bay Community Hospital.
Dr. King testified that he had extensive discussions with Dr. Jessup about the covenant not to compete, and knowing that Dr. Jessup was residing in the Melbourne area, he specifically drew up the boundary lines of the restricted area so that in the event of a separation, Dr. Jessup could still reasonably practice in the Melbourne area without having to relocate his family. Dr. King described the various ways he introduced Dr. Jessup into the community, including writing numerous letters of introduction to hospitals and referring physicians, and giving Dr. Jessup many of his patients, all in an effort to help Dr. Jessup establish his own goodwill which Dr. King saw as beneficial to both of them. Dr. King further testified that on many occasions he attempted to negotiate with Dr. Jessup about becoming a partner in the practice but was met with no response, and that he was "floored" when Dr. Jessup ultimately announced his intention to leave the practice and establish his own competing practice. Dr. King also testified that, as a result of Dr. Jessup's actions, he has experienced emotional as well as financial difficulties. As to the latter, he testified that his billings have dropped by $50,000 from a thirty-six month average of $162,000 per month to $114,000 per month, his lowest monthly billing in three years. Dr. King attributed the drop in billings largely to the fact that Dr. Jessup was now receiving the bulk of physician referrals of new in-hospital patients.
Dr. Jessup presented counter evidence which cast doubt upon Dr. King's testimony that he had suffered irreparable injury since Dr. Jessup's departure. Specifically, the parties' former office manager of six years testified that a drop in billings in July may have been attributable to the "snow bird" patients migrating back north, and to the fact that Dr. King had taken a one week vacation.
Based on the evidence presented, the trial court found that the grounds for obtaining a temporary injunction pursuant to section 542.33, Florida Statutes (1993), had not been demonstrated, and accordingly, denied relief.
Section 542.33 establishes the legal principles applicable to covenants not to compete. Prior to its 1990 amendment, the section simply stated that a covenant not to compete could be, in the discretion of the court, enforced by injunction. While it has long been recognized that, before injunctive relief can be granted, the movant must show irreparable injury, Langford v. Rotech Oxygen & Medical Equipment, Inc., 541 So.2d 1267 (Fla. 5th DCA 1989), in the case of covenants not to compete, a judicially created presumption of irreparable injury upon breach evolved. The only requirements to obtain an injunction were to establish a valid covenant not to compete and a breach. Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla.1985). The "presumption" of irreparable injury resulted from the recognition that monetary damages are difficult to prove with any certainty and that, even if provable, would not adequately compensate for all aspects of the violation of a covenant not to compete. Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133 (Fla. 4th DCA 1981). Moreover, "the delay inherent in the need to prove harm would eviscerate the injunctive remedy." Jewett Orthopaedic Clinic, P.A. v. White, 629 So.2d 922 (Fla. 5th DCA 1993).
Then in 1990 the legislature severely weakened covenants in favor of the breaching competitor by amending section 542.33 to read as follows:
542.33 Contracts in restraint of trade valid.
* * * * * *
(2)(a) One who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent, independent contractor, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the goodwill from him, and so long as such employer, continues to carry on a like business therein. Said agreements may, in the discretion *341 of a court of competent jurisdiction, be enforced by injunction. However, the court shall not enter an injunction contrary to the public health, safety, or welfare or in any case where the injunction enforces an unreasonable covenant not to compete or where there is no showing of irreparable injury. However, use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined....
(Emphasis added). Under the 1990 amendment, the legislature eliminated the judicial presumption by requiring a showing of irreparable injury before an injunction could be entered.[1]Jewett, 629 at 927. See also State Chemical Mfg. Co. v. Lopez, 642 So.2d 1127 (Fla. 3d DCA 1994); AGS Computer Services, Inc. v. Rodriguez, 592 So.2d 801 (Fla. 4th DCA 1992) (party seeking injunction to enforce covenant not to compete was required to plead and prove irreparable injury because irreparable injury is no longer presumed upon proof of breach of a valid covenant not to compete under the 1990 amendment to section 542.33). Certain facts would still give rise to a presumption, but irreparable injury was no longer automatic upon proving a breach of a covenant not to compete.
In the instant case, the trial court denied injunctive relief when Dr. King failed to establish an irreparable injury required by section 542.33. Dr. King maintains, however, that he did prove irreparable injury through testimony showing the downturn in billing, the loss of in-hospital patients, and the loss of patients through referring physicians. But Dr. Jessup provided counter evidence which the trial court apparently accepted. Dr. King also contends he is entitled to the statutory presumption of injury because Dr. Jessup "directly solicited" patients of their former joint medical practice by placing advertisements in the local newspaper announcing Dr. Jessup's new address. Although placing an advertisement in the local newspaper is certainly a form of solicitation, we cannot conclude that such is a form of "direct solicitation" of the past patients. Nor does the fact that past patients voluntarily sought out Dr. Jessup at his new practice establish direct solicitation. See Kephart v. Hair Returns, Inc., 685 So.2d 959 (Fla. 4th DCA 1996), rev. denied, 695 So.2d 699 (Fla.1997) (non-compete did not prohibit former employee from servicing customers who voluntarily followed employee to her new place of employment).
We find the record contains sufficient competent evidence to support the trial court's conclusion that Dr. King failed to establish that he has suffered irreparable injury by Dr. Jessup's breach of the covenant not to compete. Accordingly, we affirm the trial court's order denying his petition for injunctive relief.
AFFIRMED.
PETERSON and THOMPSON, JJ., concur.
DAUKSCH, J., concurs specially with opinion.
DAUKSCH, Judge, concurring.
I agree with the conclusion reached because the case rests upon the factual evidence and it is the trier of fact, the judge in this proceeding in equity, who decides factual disputes.
NOTES
[1] Section 542.33 has since been repealed with respect to restrictive covenants entered into or having an effective date on or after July 1, 1996, but section 542.33 continues to govern enforcement of restrictive covenants entered into before that date. See §§ 542.331, 542.335, Florida Statutes (Supp.1996). Accordingly, since the parties' employment agreement was entered into in 1992, section 542.33 is applicable. See Bradley v. Health Coalition, Inc., 687 So.2d 329 (Fla. 3d DCA 1997) (the enforceability of a covenant not compete under the Florida Statutes is governed by the law in effect at the time the agreement was entered into).