WETHERELL, J.
Smart Pharmacy, Inc., appeals the order denying its motion for a temporary injunction against Appellees Damian Viceari and Pensacola Apothecary, Inc. We reverse the order and remand for entry of a temporary injunction because the trial court erroneously concluded that Smart Pharmacy had an adequate remedy at law and that it does not have a substantial likelihood of success on the merits of its claims against Appellees.

Factual and Procedural Background

Smart Pharmacy is a compounding pharmacy that makes and fills prescriptions for specialized medications requiring mixtures of ingredients or doses that are not available in standard, mass-produced, commercially available medications. Smart Pharmacy’s business is dependent upon physicians prescribing its compounded medications to their patients, and as a result, Smart Pharmacy considers its physician referral sources and their prescribing patterns to be trade secrets.
Viccari worked as a sales representative for Smart Pharmacy, and his job was to market Smart Pharmacy’s products and *989 services to physicians in the Jacksonville-area market (i.e., Baker, Clay, Duval, Nassau, and St. Johns Counties). During his employment with Smart Pharmacy, Viccari executed a noncompete agreement that, among other things, prohibited him from competing against Smart Pharmacy in the Jacksonville-area market for a period of two years after his employment ended.
Three months after Viccari resigned from Smart Pharmacy, he started working as a sales representative for another compounding pharmacy, Pensacola Apothecary. The work that Viccari performed at Pensacola Apothecary was the same work that he performed at Smart Pharmacy, i.e., marketing his employer’s compounded medications to physicians. Additionally, while working for Pensacola Apothecary, Viccari solicited business from some of the same physicians in the Jacksonville-area market who he solicited while working for Smart Pharmacy.
Shortly after Viccari started working for Pensacola Apothecary, Smart Pharmacy filed suit against Appellees seeking damages and injunctive relief for Viccari’s alleged breach of his noncompete agreement and his and Pensacola Apothecary’s alleged misuse of Smart Pharmacy’s trade secrets. Smart Pharmacy also sought a temporary injunction to enforce the non-compete agreement and enjoin Appellees from engaging in the conduct alleged in the complaint.
The trial court denied the motion for a temporary injunction after an evidentiary hearing. The court reasoned that although the noncompete agreement validly protected Smart Pharmacy’s legitimate business interests in its relationships with referring physicians, Smart Pharmacy had an adequate remedy at law because some of its alleged damages were “quantifiable.” However, the court also found that Smart Pharmacy did not have a substantial likelihood of success on the merits of its claims against Appellees because some of its alleged damages were speculative.
Smart Pharmacy timely appealed the order denying its motion for a temporary injunction to this court. We have jurisdiction to review this nonfinal order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B).

Analysis

In order to obtain a temporary injunction, Smart Pharmacy was required to establish (1) the likelihood of irreparable harm, (2) the unavailability of an adequate remedy at law, (3) a substantial likelihood of success on the merits, and (4) that the injunction will serve the public interest. SunTrust Banks, Inc. v. Cauthon & McGuigan, PLC, 78 So.3d 709, 711 (Fla. 1st DCA 2012). Smart Pharmacy contends that it established each of these elements and, thus, it was error for the trial court not to enter a temporary injunction. We agree.
“The right to prohibit the direct solicitation of existing customers is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer.” Atomic Tattoos, LLC v. Morgan, 45 So.3d 63, 65 (Fla. 2d DCA 2010) (internal quotations and alterations omitted). Here, the record reflects—and Appellees do not dispute—that Viccari violated his noncompete agreement by directly soliciting some of the same physicians in the Jacksonville-area market on behalf of Pensacola Apothecary who he solicited while working as a sales representative for Smart Pharmacy. Additionally, the record reflects that Pensacola Apothecary was complicit in Viccari’s violation of the agreement and benefitted from Viccari’s use of Smart Pharmacy’s trade secrets. Accordingly, contrary to the trial court’s conclu *990 sion,[1] Smart Pharmacy established a substantial likelihood of success on the merits of its claims against Appellees. See Walsh v. PAW Trucking, Inc., 942 So.2d 446, 448 (Fla. 4th DCA 2006) (“Evidence that an enforceable covenant not to compete was breached will support a trial court’s finding of the likelihood of success on the merits.”).
“The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.” § 542.335(l)(j), Fla. Stat. To rebut the presumption, the defendant must establish “the absence of an injury.” DePuy Orthopaedics, Inc. v. Waxman, 95 So.3d 928, 939 (Fla. 1st DCA 2012). Here, Smart Pharmacy was entitled to a presumption of irreparable harm based on Viccari’s violation of his noncompete agreement, and the presumption was not rebutted because it was undisputed that Smart Pharmacy lost at least some business to Pensacola Apothecary as a direct result of Viccari’s breach and Pensacola Apothecary’s complicity therein.
Smart Pharmacy does not have an adequate remedy at law for the irreparable harm it has suffered, and may continue to suffer,[2] as a result of Appellees’ actions because “monetary damages are difficult to prove with any certainty and ... even if provable, would not adequately compensate for all aspects of the violation of a covenant not to compete.” King v. Jessup, 698 So.2d 339, 340 (Fla. 5th DCA 1997); see also Miller Mech., Inc. v. Ruth, 300 So.2d 11, 12 (Fla.1974) (explaining that in cases involving a violation of a covenant not to compete, “the normal remedy is to grant an injunction ... because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the employee’s breach of the agreement”). Indeed, this point is reinforced in this case by the trial court’s findings that some of Smart Pharmacy’s alleged damages were “quantifiable” while other al *991 leged damages were “speculative.” See Variable Annuity Life Ins. Co. v. Hausinger, 927 So.2d 243, 245 (Fla. 2d DCA 2006) (reversing denial of a temporary injunction even though “money damages were ascertainable to some clients that [the former employee] admittedly solicited” because “the harm presumed under the statute includes the potential damages to [the plaintiffs] longstanding relationships with its customers and the protection of confidential client information”).
Finally, the record reflects that a preliminary injunction would serve the public interest because the trial court found that Smart Pharmacy has a legitimate business interest in protecting its relationships with its referral sources. See Atomic Tattoos, 45 So.3d at 66 (“A finding that a covenant ‘protects a legitimate business interest is also important to public interest considerations.’” (quoting PAW Trucking, 942 So.2d at 448)). Appellees did not argue below that there is a public interest that would override enforcement of the noncompete agreement in this case,[3] and the trial court did not identify any such overriding public interest as a basis for denying the motion for a temporary injunction. See § 542.335(l)(i), Fla. Stat. (stating that a court may not refuse to enforce a covenant not to compete on public policy grounds “unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint”).
In sum, because Smart Pharmacy established each of the elements required for a temporary injunction, the trial court should have entered a temporary injunction against Appellees after determining an appropriate bond.[4] See § 542.335(1)0), Fla. Stat. (“No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond...,”); Fla. R. Civ. P. 1.610(b) (“No temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined.”).

*992
Conclusion

For the reasons stated above, we reverse the order denying Smart Pharmacy’s motion for a temporary injunction and remand for entry of a temporary injunction against Appellees after a hearing to establish an appropriate bond.
REVERSED and REMANDED with directions.
WOLF, J., and DEMPSEY, ANGELA, Associate Judge, concur.

. The trial court concluded that Smart Pharmacy did not have a substantial likelihood of success on the merits of its claims against Appellees because some of its alleged damages were "speculative.” ■ This conclusion was erroneous because Smart Pharmacy was not required to prove the full extent of its damages at the preliminary injunction stage; it was only required to "present[] 'proof to a reasonable certainty of the cause of action stated in the complaint’ ” See Atomic Tattoos, 45 So.3d at 65 (quoting Murtagh v. Hurley, 40 So.3d 62, 67 (Fla. 2d DCA 2010)).

. On this point, we have not overlooked Ap-pellees’ argument that a temporary injunction is unnecessary at this point because Viccari no longer works for Pensacola Apothecary or in the compounding pharmacy ‘ industry. However, this argument is based on facts that were presented in affidavits filed with this court during the pendency of this appeal, not evidence presented to the trial court at the hearing on Smart Pharmacy’s motion for a temporary injunction. Accordingly, this argument does not provide a basis for us to affirm the trial court’s order. See Robertson v. State, 829 So.2d 901, 906-07 (Fla.2002) (emphasizing that the appellate court may only affirm on an alternative ground not argued to the trial court if that ground is supported by the record before the trial court). Moreover, the facts asserted by Appellees do not necessarily render this case moot or establish that a temporary injunction is unnecessary because, as Smart Pharmacy points out in its reply brief, the "post-ruling affidavits do not allege that Pensacola Apothecary has turned away any business that it wrongfully obtained [or] allege that Appellees have returned the confidential information and trade secrets they misappropriated from Smart Pharmacy.” These are issues that may be addressed by the trial court if Appellees seek to dissolve the temporary injunction. See generally Brock v. Brock, 667 So.2d 310, 312 (Fla. 1st DCA 1995).(“A temporary injunction should be dissolved only where the facts and circumstances have changed to the point that equity dictates the injunction is no longer needed.’’).

. We recognize that Appellees argued below that the noncompete agreement should not be enforced against Viccari because he allegedly resigned from Smart Pharmacy because he was concerned about the legality of certain business practices at Smart Pharmacy. However, the trial court made no findings on this issue, and it was not until oral argument that Appellees tied this claim to the public interest element of the preliminary injunction test. Accordingly, we decline to consider this argument. See Powell v. State, 120 So.3d 577, 592-93 (Fla. 1st DCA 2013) (explaining that the court will generally not consider issues raised for the first time at oral argument).

. Although Viccari’s noncompete agreement provided that it could be enforced "without [Smart Pharmacy] having to post bond or other security,” this provision is unenforceable. See § 542.335(l)(j), Fla. Stat. ("[T]he court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond.”). This provision does not, however, render the entire noncompete agreement unenforceable as Appellees contend. First, the statute does not preclude the court from enforcing the agreement in its entirety, but rather only prohibits enforcement of the “contractual provision waiving the requirement of an injunction bond” (emphasis added). Second, the non-compete agreement contained a severability clause providing that the invalidity of a provision of the agreement would not affect the validity and enforceability of the remainder of the agreement. Third, Smart Pharmacy did not seek to enforce this contractual provision, and its representative testified at the eviden-tiary hearing that the company was prepared to post a bond if necessary to obtain a temporary injunction.