# Third District Court of Appeal

## State of Florida

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2586
Lower Tribunal No. 17-15057
_____

## Data Payment Systems, Inc., etc.,

Appellant,

vs.

## Christopher Caso, etc., et al.,

Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Eric William Hendon, Judge.

Barakat Law, PA, and Brian Barakat, for appellant.

Garcia-Menocal & Perez, P.L., and Anthony J. Perez and Alfredo Garcia Menocal; The Carbonell Law Group, and Jorge Carbonell, for appellees.

Before ROTHENBERG, C.J., and SUAREZ and SCALES, JJ.

SCALES, J.

Appellant, plaintiff below, Data Payment Systems, Inc. d/b/a One Payment ("Data Payment"), appeals a non-final order denying its motion seeking to

temporarily enjoin appellees, defendants below, from violating covenants of non-compete agreements executed by two of the entity defendants. Because it appears from the transcript of the hearing on Data Payment's motion that the trial court (i) failed to consider the statutory presumption of irreparable injury potentially implicated in this case, and (ii) erroneously determined that Data Payment had an adequate remedy at law that precluded injunctive relief, we reverse and remand for the trial court to conduct a new hearing on Data Payment's motion.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

Data Payment is in the business of providing credit card and payment processing services to merchants in Florida and throughout the United States. Data Payment provides its services to its customers directly, and also through independent contractors referred to as "sub-offices."

In July 2016, Data Payment entered into a written sub-office agreement with defendant Ignite Payments, Inc. ("Ignite"). This written sub-office agreement (the "Ignite agreement") contains restrictive covenants, including a non-compete clause[1]

---

[1] The non-compete provisions provide:

> 5.1 <u>Covenant not to Compete</u>:  During the term of this Agreement and for eighteen (18) months after termination with cause by [Data Payment] or termination without cause by Sub Office, Sub Office and its principals shall not:

> (a) Engage directly or indirectly, in any business which is competitive with the business of [Data Payment] in providing payment processing services (a "Competitive Business") or purchase any property or

2

and a confidentiality clause.[2]  Defendant Juan Marcos Batista executed this

---

assets relating to any Competitive Business within the state of Florida (the "Restrictive Territory").

(b) Directly or indirectly own an interest in, manage, operate, join, control, lend money, or render financial or other assistance to any person that engages in any Competitive Business with Restrictive Territory.

(c) Solicit or attempt to solicit any present, past, or pending Merchants doing business with [Data Payment].

(d) Either party shall not hire or attempt to hire any employee, agent, or independent contractor of [Data Payment] or Sub Office, including any person who has terminated employment or an independent contractor relationship for any reason within six (6) month [sic] prior to the execution of this Agreement and for a six (6) month period after that termination.

(e) In the event this Agreement is terminated by [Data Payment] without cause, Sub Office shall not be subject to Section 5.1(a).

The Ignite agreement further provides that any violation of the non-compete provision "may cause irreparable harm to either party" such that "either party shall be entitled to seek an injunction in order to restrain any further violation . . . ."

[2]  The Ignite agreement incorporates a confidentiality agreement that was separately executed by defendant Juan Marcos Batista on behalf of Ignite.  The Ignite confidentiality agreement is a separate document appended to the Ignite sub-office agreement, and imposes a duty on Ignite to prevent disclosure of Data Payment's "Confidential Information," which is described as including the following:

Technical and business information relating to [Data Payment's] proprietary ideas, patentable ideas, copyrights and/or trade secrets, existing and/or contemplated products and services, software, schematics, research and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing, and current or future business plans and models,

3

agreement on behalf of Ignite.

Thereafter, Batista, along with another defendant, Christopher Caso, allegedly created defendant Onepay LLC ("Onepay"). In January 2017, Data Payment entered into a sub-office agreement with Onepay (the "Onepay agreement"). This agreement contains restrictive covenants[3] nearly identical to those contained in the Ignite agreement, including a "twelve-month" non-compete clause. The Onepay agreement was also executed by Batista.

Thereafter, according to Data Payment, defendants Caso and Batista allegedly created a new business venture, Ireland Pay LLC ("Ireland Pay") to provide payment processing services in Florida in direct competition with Data Payment. Data Payment then terminated the Ignite and Onepay agreements for cause. Data Payment alleges that Caso and Batista, through their access to Data Payment's system by virtue of the Ignite and Onepay agreements, began to misappropriate Data Payment's trade secrets and to solicit Data Payment's

---

regardless of whether such information is designated as "Confidential Information" at the time of its disclosure.

The confidentiality agreement further provides that, if there is a breach or threatened breach of the confidentiality agreement, Data Payment "shall be entitled to injunctive relief."

[3] While the Onepay agreement contains the same confidentiality addendum as did the Ignite agreement, the copy in the record is unexecuted. If Onepay ever executed a confidentiality agreement, it was not made a part of the record.

4

customers. Caso also allegedly confronted a Data Payment employee at the place of business of a Data Payment customer and threatened the Data Payment employee with violence.

In June 2017, Data Payment initiated the instant action against Ignite, Onepay, Ireland Pay, Batista and Caso. Data Payment's multi-count Second Amended Complaint asserts claims for temporary and permanent injunctive relief, misappropriation of trade secrets, breach of contract, tortious interference, and to pierce the corporate veils of Ignite, Onepay and Ireland Pay. Relying on the non-compete and confidentiality provisions of the Ignite and Onepay agreements, Data Payment also sought emergency, temporary injunctive relief to enjoin: (i) each of the defendants from threatening any further acts of violence toward Data Payment and its employees; (ii) each of the defendants from retaining any of Data Payment's trade secrets or other confidential business information; (iii) Batista, Ignite, and Onepay from violating the restrictive covenants set forth in the Ignite and Onepay agreements; and (iv) Caso and Ireland Pay from aiding and abetting the other defendants in violating the restrictive covenants set forth in the Ignite and Onepay agreements.

In October 2017, the trial court conducted an evidentiary hearing on Data Payment's temporary injunction motion, and, on October 27, 2017, entered the appealed-from order denying Data Payment's motion. The otherwise unelaborated

order denies Data Payment's motion "as to all parties for reasons stated on the record." The transcript from the hearing indicates that the trial court denied Data Payment's motion because (i) Data Payment presented no testimony "putting a quantification" on any irreparable harm Data Payment allegedly would suffer if the injunction were not entered, and (ii) the availability of other causes of action asserted by Data Payment established the existence of an adequate remedy at law. Indeed, after making those threshold determinations, the trial court concluded:

> THE COURT: . . . This Court need go no further because this Court has determined that there is specifically . . . a remedy at law that the parties can and are pursuing in this matter. An [sic] injunctive relief is not warranted. . . . [T]his Court will not even reach the other aspects with respect to whether or not there was an . . . existing contract or the parties were obligated under the agreement because . . . having [an] adequate remedy at law, that defeats the injunctive relief request in and of itself. Thank you all.

Data Payment timely appealed the trial court's non-final order denying its motion seeking temporary injunction relief.[4]

## II.   ANALYSIS[5]

---

[4] We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B).

[5] "To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." Colucci v. Kar Kare Auto. Group, Inc., 918 So. 2d 431, 436 (Fla. 4th DCA 2006). As relevant here, the trial court's determination of the legal standard to apply when a party seeks a temporary injunction based on the violation of a restrictive covenant is a question of law that we review *de novo*. See Medco Data, LLC v. Bailey, 152 So. 3d 105, 107 (Fla. 2d DCA 2014).

Generally, a movant seeking a temporary injunction must establish the following elements: (i) likelihood of irreparable harm and unavailability of an adequate remedy at law; (ii) substantial likelihood of success on the merits; (iii) injury to the movant that outweighs the harm to the opponent; and (iv) that an injunction will not disserve the public interest. See Reliance Wholesale, Inc. v. Godfrey, 51 So. 3d 561, 564 (Fla. 3d DCA 2010). In this case, having found that Data Payment failed to satisfy the first prong, the trial court denied Data Payment's temporary injunction motion without conducting any further analysis as to the remaining three prongs. For the following reasons, we conclude that the trial court applied the incorrect law when conducting its inquiry as to the first prong, thus requiring another hearing on the matter.

First, Data Payment was not required to quantify the irreparable harm it would suffer if a temporary injunction were not entered. As it relates to an alleged breach of a non-compete agreement, irreparable injury "does not have reference to the amount of damage caused, but rather to the difficulty of measuring the amount of damages inflicted." Air Ambulance Network, Inc. v. Floribus, 511 So. 2d 702, 702-03 (Fla. 3d DCA 1987) (quoting 42 Am. Jur. 2d Injunctions § 49). Therefore, "an injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard." Id.

7

Moreover, in 1996, the Florida Legislature adopted section 542.335 of the Florida Statutes to specifically validate, and codify the requirements for enforcement of, written covenants restricting or prohibiting competition. See Ch. 96-257, § 1, Law of Fla; Corp. Express Office Prods., Inc. v. Phillips, 847 So. 2d 406, 409 n.2 (Fla. 2003) ("According to the Senate Staff Analysis, section 542.335 'substantially expands and clarifies the noncompete statute governing validity and enforcement of contracts in restraint of trade.'" (quoting Fla. S. Comm. on Judiciary, SB 282 (1996) Staff Analysis 5 (Mar. 27, 1996))). Among other things, the statute creates a presumption of irreparable injury to the person seeking to enjoin a violation of a non-compete clause. See § 542.335(1)(j), Fla. Stat. (2016). This provision reads, in its entirety, as follows:

> (1) Notwithstanding s. 542.18 and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:
>
>    . . . .
>
> (j) A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. ***The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.*** No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond.

Id. (emphasis added).

Here, as the hearing transcript reveals, the trial court determined that, even if a violation of the non-compete agreements had occurred, Data Payment would not be entitled to injunctive relief because it had presented no evidence of irreparable harm. Thus, it appears that the trial court erred by not employing the statutory presumption of irreparable harm dictated by section 542.335(1)(j), which requires consideration of whether the subject agreements are lawful and enforceable. See § 542.335(1)(g), (j) Fla. Stat. (2013); Medco Data, LLC v. Bailey, 152 So. 3d 105, 107 (Fla. 2d DCA 2014) ("Because the trial court made findings that would trigger the presumption of irreparable injury under section 542.335(1)(j) but failed to apply the presumption, we reverse the order on appeal and remand for reconsideration in light of the presumption.").

Second, it also appears from the hearing transcript that the trial court determined Data Payment is not entitled to injunctive relief because of the existence of other causes of action – seeking money damages against the defendants – pleaded by Data Payment. Whether Data Payment may prevail at trial for damages on any of its underlying causes of action against the defendants, however, does not *ipso facto* preclude entry of a temporary injunction in this case. See Reliance Wholesale, Inc., 51 So. 3d at 566 ("[A]lthough a trial court may award damages for a breach of an employee's agreement not to compete, 'the

9

normal remedy is to grant an injunction. This is so because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the employee's breach of the agreement.'" (quoting Capraro v. Lanier Bus. Prods., Inc., 466 So. 2d 212, 213 (Fla. 1985))); see also Smart Pharmacy, Inc. v. Viccari, 213 So. 3d 986, 990 (Fla. 1st DCA 2016) ("Smart Pharmacy does not have an adequate remedy at law for the irreparable harm it has suffered, and may continue to suffer, as a result of Appellees' actions because 'monetary damages are difficult to prove with any certainty and . . . even if provable, would not adequately compensate for all aspects of the violation of a covenant not to compete.'" (footnote omitted) (quoting King v. Jessup, 698 So. 2d 339, 340 (Fla. 5th DCA 1997))). The trial court, therefore, erred when it determined, as a threshold matter, that, because Data Payment had alleged other causes of action against these defendants seeking monetary damages, Data Payment had an adequate remedy at law that precluded Data Payment from obtaining injunctive relief for the alleged breach of the covenants not to compete.

## III. CONCLUSION

In considering Data Payment's temporary injunction motion, the trial court neglected to consider section 542.335(1), the statutory provision applicable to injunctions sought for alleged violations of non-compete agreements. The trial court also erroneously determined that injunctive relief was unavailable to Data

Payment because Data Payment had an adequate remedy at law by virtue of other causes of action pled by Data Payment. We, therefore, reverse the order on appeal and remand the case to the trial court for the court to conduct another hearing on Data Payment's temporary injunction motion.[6]

Reversed and remanded, with instructions.

---

[6] We express no opinion on the merits of Data Payment's motion, whether Data Payment is entitled to injunctive relief, or the other counts raised in Data Payment's Second Amended Complaint. Our reversal stems solely from what appears to be a misapprehension by the trial court of the irreparable harm/adequate remedy at law prong related to the alleged violations of the subject non-compete agreements.