BLACK, Judge.
Atomic Tattoos, LLC (“Atomic Tattoos”) seeks timely review of the non-final order denying its motion for temporary injunction seeking to enforce a covenant not to compete included in an independent contractor employment agreement (“agreement”). Because the trial court abused its discretion in denying the motion, we reverse and remand with instructions.
Atomic Tattoos owned and operated a tattoo studio located in Largo, Florida. In January 2007 Morgan became an independent contractor tattoo artist with Atomic Tattoos and signed an independent contractor agreement which contained a restrictive covenant. The covenant not to compete provided that for one year following termination of employment Morgan would not enter into or engage in any business in competition with Atomic Tattoos within a fifteen-mile radius of the location at which Morgan was employed. It also prohibited Morgan from soliciting, accepting, diverting, or otherwise having any business relationships “in respect of providing tattoo artist and/or body piercing services” to existing customers of Atomic Tattoos.
On April 17, 2009, Atomic Tattoos terminated Morgan, and Morgan subsequently opened Saints & Scholars Tattoos, approximately 6.3 miles from the Atomic Tattoos location that employed Morgan. In June 2009 Atomic Tattoos filed suit against Morgan for breach of the agreement and subsequently filed its motion for temporary injunction.
In the motion for temporary injunction, Atomic Tattoos alleged that prior to becoming an independent contractor with Atomic Tattoos, Morgan had no experience as a tattoo artist or in the tattoo industry; that Atomic Tattoos provided Morgan with extraordinary training in an apprenticeship program which Atomic Tattoos had developed; that Morgan had access to customer lists; that upon his termination, Morgan contacted and solicited Atomic Tattoos’ customers; that Morgan admitted he had taken Atomic Tattoos’ customer list; that Morgan used the list to send out a mass mailing for Saints & Scholars; and that Morgan continued to compete directly against Atomic Tattoos, in violation of the restrictive covenant. The motion prayed for a one-year injunction prohibiting Morgan from working in a business identical or similar to Atomic Tattoos and from soliciting Atomic Tattoos’ customers.
 This court reviews orders granting or denying temporary injunctions under the abuse of discretion standard. Ware v. Polk County, 918 So.2d 977, 979 (Fla. 2d DCA 2005). An appellant who challenges the trial court’s order on a motion for temporary injunction has a heavy burden; the trial court’s ruling is presumed to be correct and can only be reversed where it is clear the court abused its discretion. JonJuan Salon, Inc. v. Acosta, 922 So.2d 1081, 1083 (Fla. 4th DCA 2006) (quoting 3299 N. Fed. Highway, Inc. v. Bd. of Cnty. Comm’rs, 646 So.2d 215, 220 (Fla. 4th DCA 1994)).
In determining whether a temporary injunction should issue, the trial court considers whether the moving party has demonstrated (1) irreparable harm to the moving party unless the injunction issues, (2) unavailability of an adequate legal rem *65 edy, (3) a substantial likelihood of success on the merits, and (4) that the public interest is supported by the entry of the injunction. Masters Freight, Inc. v. Servco, Inc., 915 So.2d 666, 666 (Fla. 2d DCA 2005). We find that Atomic Tattoos met its burden.
Section 542.335(1)(b), Florida Statutes (2009), requires a party seeking enforcement of a restrictive covenant to prove the existence of one or more legitimate business interests justifying the covenant. “Legitimate business interests” include, but are not limited to: “[vjaluable confidential business or professional information that otherwise does not qualify as trade secrets,” “[substantial relationships with specific prospective or existing customers,” and customer goodwill associated with “[a] specific geographic location” or “[a] specific marketing or trade area.” Id.
At the hearing on the motion, Atomic Tattoos presented evidence that it researches whether the location population matches its customer base; that it considers factors such as age and income level to ensure it can be successful at the particular location; that it keeps an extensive database of its customers, including how far they live from the studio; and that this database illustrates that a majority of Atomic Tattoos’ clients live within twelve to fifteen miles of any of its locations. Moreover, testimony was presented that repeat customers comprise a percentage of Atomic Tattoos’ business and that Atomic Tattoos tries to increase the potential for repeat business with its customers through advertising and direct mailing. Atomic Tattoos established that Morgan had access to its customer list, customer database, and files for operation of the company. It also established that at least twelve customers of Atomic Tattoos were listed as customers of Saints & Scholars on Saints & Scholars’ website.
“[T]he right to prohibit the direct solicitation of existing customers” is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer. Dyer v. Pioneer Concepts, Inc., 667 So.2d 961, 964 (Fla. 2d DCA 1996); see Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 870 So.2d 111, 114 (Fla. 2d DCA 2003). Morgan admitted that in June 2009, after his termination from Atomic Tattoos, he solicited clients of Atomic Tattoos that he had personally tattooed by sending out a mailer. Morgan testified that he had the customers’ addresses because he took Atomic Tattoos’ customer list and that about twenty-five percent of his customers at Saints & Scholars were former customers of Atomic Tattoos.
“The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.” § 542.335(l)(j). Morgan does not challenge the reasonableness of the limitations provided in the covenant; it is undisputed that Morgan opened up Saints & Scholars within seven miles from Atomic Tattoos and less than a year after his termination from Atomic Tattoos. The presumption that Atomic Tattoos suffered irreparable harm as a result of Morgan’s violation of the restrictive covenant has not been rebutted. See § 542.335(l)(j).
Atomic Tattoos has established a clear legal right to injunctive relief by presenting “proof to a reasonable certainty of the cause of action stated in the complaint.” See Murtagh v. Hurley, 40 So.3d 62, 67 (Fla. 2d DCA 2010) (quoting Zimmerman v. D.C.A. at Welleby, Inc., 505 So.2d 1371, 1373 (Fla. 4th DCA 1987)). Any continued breach of the agreement and covenant not to compete could further damage Atomic *66 Tattoos’ goodwill and relationship with its clients and nothing short of an injunction would prevent that loss. Monetary damages would be difficult to determine because the number of “sales” lost, as well as any potential profit, would be nearly impossible to calculate, particularly with a continuing breach. See Milner Voice & Data, Inc. v. Tassy, 377 F.Supp.2d 1209, 1220 (S.D.Fla.2005); Zimmerman v. D.C.A. at Welleby, Inc., 505 So.2d 1371, 1373 (Fla. 4th DCA 1987).
“Evidence that an enforceable covenant not to compete was breached will support a trial court’s finding of the likelihood of success on the merits.” Walsh v. Paw Trucking, 942 So.2d 446, 448 (Fla. 2d DCA 2006). In this instance, Atomic Tattoos has established Morgan’s breach of the covenant and Morgan has admitted to the breach. However, a temporary injunction is “entirely reversible if necessary at the end of the full trial.” LaRose v. A.K., 37 So.3d 265, 266 (Fla. 2d DCA 2009).
A finding that a covenant “protects a legitimate business interest is also important to public interest considerations.” Paw Trucking, 942 So.2d at 448. Morgan argues an injunction would disserve the public because the injury caused to him would far outweigh any speculative damages suffered by Atomic Tattoos. Morgan’s argument is without merit. Section 542.335(l)(g)(l) states: “In determining the enforceability of a restrictive covenant, a court ... [sjhall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought.”
Based on the foregoing, we reverse and remand with instruction that the trial court enter a temporary injunction to begin on the date on which the trial court enters its order. The trial court is advised that it is required to set an injunction bond pursuant to Florida Rule of Civil Procedure 1.610(b).
Reversed and remanded.
NORTHCUTT and WALLACE, JJ., Concur.