NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


REV RECREATION GROUP, INC., a )
Delaware corporation, and GENERAL RV )
CENTER, INC., a Michigan corporation, )
　　　　　　　　　　　　　　　　　　)
　　　　　Appellants/Cross-Appellees, )
　　　　　　　　　　　　　　　　　　)
v. 　　　　　　　　　　　　　　　　)　　　　Case No. 2D18-679
　　　　　　　　　　　　　　　　　　)
LDRV HOLDINGS CORP., doing business )
as Lazydays RV, a Delaware corporation. )
　　　　　　　　　　　　　　　　　　)
　　　　　Appellee/Cross-Appellant. )
　　　　　　　　　　　　　　　　　　)

Opinion filed November 9, 2018.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Hillsborough
County; Steven Scott Stephens, Judge.

Lee D. Wedekind, III, Frank Morreale, and
Katherine M. Borello of Nelson Mullins Riley
& Scarborough LLP, Jacksonville, for
Appellant/Cross-Appellee, REV Recreation
Group, Inc.

Michael D. Dolenga of Dolenga & Dolenga
PLLC, Farmington, Michigan; and John A.
Schifino and Justin P. Bennett of Burr &
Forman LLP, Tampa, for Appellant/Cross-
Appellee, General RV Center, Inc.

Kristin A. Norse and Stuart C. Markman of
Kynes, Markman & Felman, P.A., Tampa;
and Kenneth G. Turkel and Shane B. Vogt
of Bajo Cuva Cohen & Turkel, P.A., Tampa,
for Appellee/Cross-Appellant.

LUCAS, Judge.

This is a dispute over who has the right to sell recreational vehicles in a lucrative central Florida market. A manufacturer, REV Recreation Group, Inc. (REV), and a dealership, General RV Center, Inc. (General RV), appeal a temporary injunction order the trial court entered in favor of another dealership, LDRV Holdings Corp. (Lazydays). Lazydays, in turn, has filed a cross-appeal challenging the trial court's requirement for a $1 million injunction bond. For the reasons we explain below, we must affirm the court's temporary injunction but reverse the imposition of a bond.

I.

The litigation between these parties implicates technical distinctions between various models of recreational vehicles and the marketing practices that pertain to them, but the legal dispute can be easily stated: did REV unlawfully terminate or breach an exclusive dealership agreement it had had in place with Lazydays when REV entered into a new agreement with Lazydays' competitor, General RV, to sell its "Signature" and "Marquis" models of recreational vehicles? Days before a recreational vehicle "supershow" was scheduled to commence in January of 2018, Lazydays filed a complaint and emergency motion for temporary injunction against REV, alleging that REV had violated provisions within sections 320.3201-.3211, Florida Statutes (2017)—governing the commercial relationships between recreational vehicle manufacturers and dealers—as well as various common law claims related to a 2009 dealership agreement and a 2015 dealership agreement it had with REV. Lazydays would later join General RV as a second defendant to its lawsuit. As amended, Lazydays asserted claims for breach of section 320.3205, breach of section 320.3203, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and violation of section

- 2 -

501.204(1), Florida Statutes (2017), against REV and for breach of section 320.3205, breach of section 320.3203, tortious interference, and violation of section 501.204(1) against General RV. Lazydays' claims are premised on various factual allegations and legal theories; our focus in this appeal is on Lazydays' contention that the "Signature" and "Marquis" models that REV had recently contracted to sell through General RV were the same "line-makes" (as that term is applied under Florida Statutes) as the "Diplomat" and "Dynasty" models REV had agreed to sell through Lazydays.

Lazydays sought to temporarily enjoin REV and General RV from selling either of these models at General RV's facility or at the show. The trial court attended to Lazydays' motion in commendably short order and scheduled a hearing in which it took evidence and testimony. In its written order, the trial court found:

> Plaintiff offered evidence that it had entered into two exclusive dealership contracts with defendant: one in 2009 that explicitly mentioned "Signature" and "Marquis" models, and another in 2015 that mentioned other model names offered in the same market segment. It was argued that the 2009 contract was terminated wrongfully and the 2015 contract was still in effect and applicable to these model names because they were legally considered the same "line-make" under the statute governing dealer-manufacture relationships in Florida. . . .
>
> . . . .
>
> At the hearing, the court concluded that the products covered by the 2015 contract were of the same line-make as the Signature and Marquis lines being allocated to the plaintiff's rival [General RV]. . . . The different model names are not determinative, as they have more similarities than differences under the statutory criteria.
>
> . . . .
>
> The plaintiff advanced credible evidence that the damage to its reputation would be irreparable. The plaintiff has shown some likelihood of success on the merits, although the court

- 3 -

acknowledges it is a question of first impression which could be decided differently [by] the appellate court. Entering the injunction does maintain the status quo, in that it prevents the defendant [REV] from immediately implementing a contractual allocation decision it made in late December 2017.

Accordingly the court enters the injunction as stated above, effective [January 12, 2018], for 30 days. This is an injunction under contract law using the statute to inform the required terms of the contract, as no violation of the statutory provisions appears. Accordingly, it is subject to a bond requirement, and . . . the court sets injunction bond at $40,000.

The injunction prohibited REV from promoting the Signature and Marquis lines through any dealership other than Lazydays for a period of thirty days. The injunction also prohibited REV or its representatives from participating in the upcoming recreational vehicle show in connection with those models.

By agreement between the parties, the injunction was extended until the court could convene another evidentiary hearing to consider REV's and General RV's motion to dissolve the injunction and Lazydays' emergency motion to modify (essentially extend) the prior temporary injunction's time and to include General RV within the injunction's ambit. A hearing on both motions was convened and after considering the testimony of numerous industry insiders and representatives and employees of the parties, the court announced that it would grant Lazydays' motion and extend the injunction. However, the court was very much troubled by the application of sections 320.3201-.3211 in this dispute.[1] In its written order extending the temporary injunction,

---

[1]In particular, the court appeared to struggle with aligning the statutorily defined term "line-make" with the industry's use of the terms "lines" and "makes." The court also expressed confusion over what the real policy intent behind the enactment of these statutes was, inasmuch as the statutes appeared to suppress competition between dealers in the market.

the trial court extended its prior injunction "until further order of court" but increased the injunction bond Lazydays would have to post to $1 million. In this appeal and cross-appeal, we consider the applicability of sections 320.3201-.3211 to the trial court's temporary injunction.

II.

As the Florida Supreme Court has explained, we employ a hybrid standard of review for orders on temporary injunctions: "To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." Gainesville Woman Care, LLC v. State, 210 So. 3d 1243, 1258 (Fla. 2017) (quoting Fla. High Sch. Athletic Ass'n v. Rosenberg, 117 So. 3d 825, 826 (Fla. 4th DCA 2013)). Where the trial court's temporary injunction concerns matters within the trial court's discretion, "[a]n appellant who challenges the trial court's order . . . has a heavy burden; the trial court's ruling is presumed to be correct and can only be reversed where it is clear the court abused its discretion." Atomic Tattoos, LLC v. Morgan, 45 So. 3d 63, 64 (Fla. 2d DCA 2010) (citing JonJuan Salon, Inc. v. Acosta, 922 So. 2d 1081, 1083 (Fla. 4th DCA 2006)).

At issue here is the proper application of sections 320.3201-.3211 of the Florida Statutes. These sections were enacted together in 2007 as part of a single, untitled act. See generally ch. 2007-258, Laws of Fla. The declared public policy of these statutes was to "protect the public health, safety and welfare" of Floridians "by regulating the relationship between recreational vehicle dealers and manufacturers, maintaining competition, and providing consumer protection and fair trade." § 320.3201(1). The applicable sections provide, in relevant part, as follows:

- 5 -

**Section 320.3203:**

(1) A manufacturer or distributor may not sell a recreational vehicle in this state to or through a dealer without having first entered into a manufacturer/dealer agreement with a dealer which has been signed by both parties.

(2) The manufacturer shall designate the area of sales responsibility exclusively assigned to a dealer in the manufacturer/dealer agreement and may not change such area or contract with another dealer for sale of the same line-make in the designated area during the duration of the agreement.

**Section 320.3205:**

(1) A manufacturer or distributor, directly or through any officer, agent, or employee, may not terminate, cancel, or fail to renew a manufacturer/dealer agreement without good cause . . . .

**Section 320.3210:**

(1) A dealer, manufacturer, distributor, or warrantor injured by another party's violation of ss. 320.3201-320.3211 may bring a civil action in circuit court to recover actual damages. The court shall award attorney's fees and costs to the prevailing party in such action. Venue for any civil action authorized by this section must exclusively be in the county in which the dealership is located. In an action involving more than one dealer, venue may be in any county in which a dealer who is party to the action is located.

. . . .

(3) In addition to the remedies provided in this section and notwithstanding the existence of any additional remedy at law, a dealer or manufacturer may apply to a circuit court for the grant, upon a hearing and for cause shown, of a temporary or permanent injunction, or both, restraining any person from acting as a dealer, manufacturer, distributor, or importer without being properly licensed pursuant to this chapter, from violating or continuing to violate any of the provisions of ss. 320.3201-320.3211, or from failing or refusing to comply with the requirements of ss. 320.3201-320.3211. Such injunction shall be issued without bond. A

single act in violation of s. 320.3203 is sufficient to authorize the issuance of an injunction.

All the parties acknowledge that these statutes were applicable to REV's dealings within Florida as a recreational vehicle manufacturer. That is, if REV wished to sell recreational vehicles in Florida, it was required to enter into a written dealership agreement with a "dealer" (as that term is defined in section 320.3202(2)), such as Lazydays or General RV, for a designated area. Moreover, the parties also recognize the prohibitions within sections 320.3203(2) and 320.3205(1): once a dealership agreement is in effect, a manufacturer cannot terminate it without good cause or sufficient prior notice, nor may it contract with another dealer to sell the same line-make of recreational vehicle within the agreement's exclusive designated area. The dispute here revolves around whether two brands of a manufacturer's recreational vehicle are the same line-make as two others.

General RV and REV spend considerable time parsing through different means of determining whether the Marquis and Signature and the Dynasty and Diplomat models are different line-makes. They argue that the statutory term can be better understood by considering how the Department of Highway Safety and Motor Vehicles has interpreted "line-make" for purposes of tracking recreational vehicles as part of a national criminal investigation database, or, alternatively, by reference to the defined term "product line" that appeared in Lazydays' dealership agreements with REV. Lazydays maintains that we need look no further than section 320.3202(6), which unambiguously defines "line-make" for purposes of these statutes. In our view, Lazydays has the better argument. There is a statute that tells us how to define this term for this kind of case, so that is what we must follow. See Eustache v. State, 248

So. 3d 1097, 1100 (Fla. 2018) ("When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, . . . the statute must be given its plain and obvious meaning." (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984))).

Section 320.3202(6) lists five criteria for a trial court to apply when deciding whether different recreational vehicles can be considered the same line-make. They are:

> (6) "Line-make" means a specific series of recreational vehicle products that:
>
> (a) Are identified by a common series trade name or trademark;
>
> (b) Are targeted to a particular market segment, as determined by their decor, features, equipment, size, weight, and price range;
>
> (c) Have lengths and interior floor plans that distinguish the recreational vehicles from other recreational vehicles with substantially the same decor, equipment, features, price, and weight;
>
> (d) Belong to a single, distinct classification of recreational vehicle product type having a substantial degree of commonality in the construction of the chassis, frame, and body; and
>
> (e) The manufacturer/dealer agreement authorizes a dealer to sell.

Unfortunately, in the order before us it appears the trial court issued conflicting determinations with respect to this subsection. On the one hand, the court found "that the products covered by the 2015 contract were of the same line-make as the Signature and Marquis lines being allocated" to General RV. It also concluded that "the different model names" that REV utilized with General RV "are not determinative,

- 8 -

as they have more similarities than differences under the statutory criteria." But then, at the conclusion of the order, the court declared that "this is an injunction under contract law using the statute to inform the required terms of the contract, as no violation of the statutory provisions appears." It is not clear to us why the court elected to fashion its temporary injunction in this manner, since the order it issued did not contain sufficient findings to support a common law temporary injunction. Cf. Salazar v. Hometeam Pest Def., Inc., 230 So. 3d 619, 621 (Fla. 2d DCA 2017) ("The issuance of a temporary injunction requires the movant to plead and prove the following elements: '(1) a likelihood of irreparable harm; (2) unavailability of an adequate legal remedy; (3) a substantial likelihood of success on the merits; and (4) considerations of the public interest support the entry of the injunction.' " (quoting Masters Freight, Inc. v. Servco., Inc., 915 So. 2d 666, 666 (Fla. 2d DCA 2005))).[2]

But that shortcoming is not necessarily fatal to the order's effect. Our court has held that a trial court's findings "should be read as a whole in the light of the

---

[2]The trial court's order does not cite to any case or Florida Rule of Civil Procedure 1.610, governing temporary injunctions. The order included findings of irreparable harm (a loss of Lazydays' reputation) and that the entry of an injunction would maintain the status quo. Accord Gawker Media, LLC v. Bollea, 129 So. 3d 1196, 1199 (Fla. 2d DCA 2014) ("The primary purpose of a temporary injunction is to preserve the status quo while the merits of the underlying dispute are litigated." (quoting Manatee County v. 1187 Upper James of Fla., LLC, 104 So. 3d 1118, 1121 (Fla. 2d DCA 2012))). However, the trial court's order made no finding that Lazydays would be without an adequate legal remedy if the injunction were not issued (in fact, it appears from the record thus far that Lazydays' claimed damages are almost entirely monetary in nature). Further, while the court's order stated that Lazydays had "shown some likelihood of success on the merits," it fell short of concluding there was a "substantial likelihood" of success on the merits, as would ordinarily be required to issue a temporary injunction. Finally, the court's written order was silent as to any consideration of public interest. However, neither REV nor General RV has argued that the trial court's ruling lacked the requisite elements of an injunction under rule 1.610; instead, their arguments focus on whether there was sufficient evidence to support each of those elements.

record on appeal, and where they are conflicting they should, where possible, be so construed as to harmonize with each other and with the judgment." Marsicano v. Rogers, 164 So. 2d 531, 532 (Fla. 2d DCA 1964). In such instances, "[a]n appellate court should uphold the evident intention of the lower court and, if possible, make the findings support the judgment." Id. Here, the trial court found that the products covered under Lazydays' 2015 dealership agreement were the same line-make under section 320.3202(6) as the Signature and Marquis lines REV subsequently contracted to sell to General RV. That finding is supported by the record before us. We think the trial court's seemingly contrary conclusion that there was no statutory violation, coupled with the somewhat puzzling reference about the statute "informing" the interpretation of the parties' contract, when read in the context of the remaining findings, simply reflect the trial court's view that (1) an injunction was appropriate; but (2) as a case of first impression under these statutes, the court could only issue a temporary injunction as a common law equitable remedy, subject to a bond.[3]

To the extent the trial court felt constrained not to apply the statutory criteria or prohibitions because an appellate court had not yet published an opinion construing them, the court was in error. Cf. Basic Energy Corp. v. State, Dept. of Corr. ex rel. Internal Imp. Tr. Fund, 709 So. 2d 124, 128 (Fla. 1st DCA 1998) (affirming trial court's application and interpretation of term in statute where "there [was] no case law

_____

[3]Our interpretation of what prompted the court's ruling in this regard is further informed by the repeated references the trial court made during the injunction hearings that an appellate court would ultimately need to provide guidance to the parties and the court as to the applicability and interpretation of these statutes. While we recognize these statutes are perhaps relatively new in Florida law, we would observe that to the extent this case could be considered one of first impression, the trial court's role in applying these statutes would in no way be diminished.

construing the term 'appropriation' "); see also McGauley v. Goldstein, 653 So. 2d 1108, 1109 (Fla. 4th DCA 1995) ("In the absence of . . . district court precedent, the judge must make an independent exercise of judgment."); Rosen ex rel. Rosen v. Zorzos, 449 So. 2d 359, 361 (Fla. 5th DCA 1984) ("[L]ack of precedent alone does not take away a common-law court's responsibility to decide each claim presented before it on its own merit."), decision quashed on other grounds, 467 So. 2d 305 (Fla. 1985).  The Legislature has specifically authorized injunctive relief as a civil remedy under section 320.3210(3) when any of sections 320.3201-.3211 are violated.  Indeed, "a single act" in violation of section 320.3203 is sufficient to warrant the issuance of an injunction. See § 320.3210(3).  Lazydays presented substantial evidence that the models REV was selling through General RV were the same line-make as the models that were the subject of Lazydays' 2015 dealership agreement, and the trial court's order included a factual finding reflective of that evidence.  None of the parties have challenged any aspect of sections 320.3201-.3211, nor do they contend in this appeal that the statutes are ambiguous.  Thus, we can construe the court's factual findings with the record as a whole to support the injunction the court entered, even if the court's legal conclusion that the statute had not been violated may have been incorrect.[4]  See Dade Cty. Sch.

_____

[4]Our decision in this regard is also guided by Medco, LLC v. Bailey, 152 So. 3d 105, 107 (Fla. 2d DCA 2014), a case in which we reversed a trial court's denial of a motion for temporary injunction where the court's factual findings appeared to support the application of a statutory presumption, but the trial court inexplicably failed to apply that presumption in its ruling.  A similar kind of error confronts us here.  We need not reverse the trial court's injunction in the case at bar, though, because, unlike the rebuttable presumption at issue in Medco (which could still be overcome, depending on the evidence presented on remand, see id.), Lazydays was entitled to a statutory remedy of injunctive relief under the facts the trial court found.  Cf. Pinecrest Lakes, Inc. v. Shidel, 795 So. 2d 191, 205 (Fla. 4th DCA 2001) ("[W]hen the [l]egislature provides for an injunction in these circumstances, it has deliberately made the new public duty and its corresponding right of enforcement an integrated statutory prescription.").

Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999) (noting that "if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record").

However, these same statutes also compel us to reverse the court's imposition of an injunction bond. Section 320.3210(3) plainly states "[s]uch injunction shall be issued without bond." The imposition of the mandatory directive "shall" removes the discretion the trial court might have otherwise employed. See Townsend v. R.J. Reynolds Tobacco Co., 192 So. 3d 1223, 1229 (Fla. 2016) ("Generally, the word 'shall' is interpreted as mandatory in nature." (citing S.R. v. State, 346 So. 2d 1018, 1019 (Fla. 1977))). If an injunction is issued under section 320.3210(3), it cannot be premised on the posting of an injunction bond. We must, therefore, reverse that part of the court's order.

III.

Reading the record as a whole, we agree that there has been a preliminary showing that REV and General RV violated section 320.3203(2). Lazydays was entitled to a temporary injunction. So while we cannot endorse the trial court's stated legal basis for the injunction it entered, from our review of the record we can find no basis to disturb what was, in the end, a correct grant of injunctive relief under the law. The only error that requires reversal is the imposition of an injunction bond. Accordingly, we affirm the trial court's decision to enter a temporary injunction but reverse and remand for the limited purpose of entering a new order striking any requirement for a temporary injunction bond. See § 320.3210(3).

Affirmed in part; reversed in part; remanded with instructions.

LaROSE, C.J., and SILBERMAN, J., Concur.