# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JEFFREY DAY; MICHAEL DeMARINIS;
HOWARD DOSSEY; and ADRIAN ARIAS PADRON,

Appellants,

v.

HYDROLOGIC DISTRIBUTION COMPANY,

Appellee.

No. 2D2024-0910
_____

November 15, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Pinellas County; Michael F. Andrews, Judge.

Jon J. Johnson and Samuel J. Heller of Older Lundy Koch & Martino,
Tampa, for Appellants.

Todd A. Jennings of MacFarlane Ferguson & McMullen, Clearwater; and
Toby K. Henderson of Sebaly Shillito + Dyer, Dayton, Ohio, for Appellee.

SILBERMAN, Judge.

Jeffrey Day, Michael DeMarinis, Howard Dossey, and Adrian Arias
Padron (collectively, "the former employees") seek review of the nonfinal
order granting a temporary injunction in favor of their former employer,
Hydrologic Distribution Company. DeMarinis, Dossey, and Padron are
each bound by a two-year noncompete, nonsolicitation, and
confidentiality agreement, and Day is bound by a separation agreement.

After leaving Hydrologic, Day began a company that directly competes with Hydrologic, and DeMarinis, Dossey, and Padron joined him at this new company. Hydrologic subsequently filed a complaint seeking injunctive relief, a restraining order, and damages against the former employees, alleging that they were in violation of their agreements with Hydrologic. It also filed a motion for temporary injunction. Hydrologic argued that the former employees were "actively targeting other Hydrologic employees" and "actively and successfully soliciting Hydrologic's customers in the Tampa market." It also argued that Day was tortiously interfering with DeMarinis, Dossey, and Padron's noncompete and nonsolicitation agreements. The trial court granted Hydrologic's motion for temporary injunction after conducting a multiday evidentiary hearing.

In its order, the trial court made detailed findings and concluded that Hydrologic had established the elements required for entry of a temporary injunction. The court enjoined DeMarinis, Dossey, and Padron from (1) working for Day's company or any other competitive business, as defined in the agreements, (2) "soliciting Hydrologic's current or prospective customers or otherwise interfering with Hydrologic's customer relationships," (3) "soliciting Hydrologic's employees or otherwise interfering with Hydrologic's relationships with its employees," and (4) using or disclosing Hydrologic's confidential information. The court enjoined all four of the former employees from aiding, inducing, or encouraging the others to violate the terms of the order.

On appeal, the former employees argue that the trial court erred in granting Hydrologic's motion because the company failed to prove the existence of a legitimate business interest. They also argue that even if

2

Hydrologic proved a legitimate business interest, the former employees sufficiently rebutted any presumption of irreparable harm that would support temporary relief.

"This court 'employ[s] a hybrid standard of review for orders on temporary injunctions: "To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." ' " *Surgery Ctr. Holdings, Inc. v. Guirguis*, 318 So. 3d 1274, 1277 (Fla. 2d DCA 2021) (alteration in original) (quoting *REV Recreation Grp., Inc. v. LDRV Holdings Corp.*, 259 So. 3d 232, 235 (Fla. 2d DCA 2018)). An appellant has a heavy burden in challenging a temporary injunction, and a "trial court's order is presumed to be correct and can only be reversed where it is clear the court abused its discretion." *Id.* (quoting *REV Recreation Grp.*, 259 So. 3d at 235).

When determining whether a temporary injunction should be granted, the trial court must consider whether the party seeking the injunction has established "(1) irreparable harm to the moving party unless the injunction issues, (2) unavailability of an adequate legal remedy, (3) a substantial likelihood of success on the merits, and (4) that the public interest is supported by the entry of the injunction." *Atomic Tattoos, LLC v. Morgan*, 45 So. 3d 63, 64-65 (Fla. 2d DCA 2010) (citing *Masters Freight, Inc. v. Servco, Inc.*, 915 So. 2d 666, 666 (Fla. 2d DCA 2005)).

"[C]ontracts that restrict or prohibit competition during or after the term of restrictive covenants" are enforceable "so long as such contracts are reasonable in time, area, and line of business." § 542.335(1), Fla. Stat. (2023). To be enforceable, the contract must be "set forth in a writing signed by the person against whom enforcement is sought," "[t]he

3

person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant," and the "person seeking enforcement . . . shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction."  § 542.335(1)(a)-(c).  "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *Surgery Ctr. Holdings*, 318 So. 3d at 1278 (quoting § 542.335(1)(j)).

Florida law provides that "the determination of whether an activity qualifies as a protected <u>legitimate</u> business interest under the statute is inherently a factual inquiry, which is heavily industry- and context-specific."  *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 786 (Fla. 2017) (citing *Infinity Home Care, L.L.C. v. Amedisys Holding, LLC*, 180 So. 3d 1060, 1065-66 (Fla. 4th DCA 2015)).  While section 542.335(1)(b)1-5 does not contain an exhaustive list as to what may constitute a legitimate business interest,

> [a] review of those examples [in section 542.335(1)(b)] confirms that a "legitimate business interest" is an <u>identifiable business asset that constitutes or represents an investment by the proponent of the restriction</u> such that, if that asset were misappropriated by a competitor (i.e., taken without compensation), its use in competition against its former owner would be "unfair competition."  Put another way, a "legitimate business interest" is <u>a business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner.</u>

*White*, 226 So. 3d at 784-85 (second alteration in original) (quoting John A. Grant, Jr. & Thomas T. Steele, *Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century*, 70 Fla. B.J. 53, 54 (Nov. 1996)).

4

Here, the trial court's thirty-five-page order granting Hydrologic's motion for temporary injunction is thorough and accurately summarizes the evidence presented by the parties. The trial court found that Hydrologic "presented evidence that it asks its employees to enter restrictive covenants to protect at least the following business interests: substantial customer relationships, confidential information, and employee training and retention."

The court also found that the Eclipse computer software used by Hydrologic is important to its operations and profitability. The software allows users to access important vendor information, including sales history, customer spending habits, and credit limits. The court recognized that Eclipse was described as the "central nervous system" and "lifeblood" of the company and that it contains "information not available to the public, especially Hydrologic competitors." The data on Eclipse is password protected and includes the email addresses and phone numbers of the decision makers at companies who purchase from Hydrologic. Thus, we reject the former employees' argument that the evidence did not establish legitimate business interests of Hydrologic that are entitled to protection.

Additionally, we find no error with the trial court's legal conclusions. The court accurately summarized the law protecting substantial relationships with specific prospective or existing customers, databases containing information that is not readily available to the public, and the legitimacy of employee nonsolicitation agreements. Hydrologic established the existence of legitimate business interests, and as the court determined, the former employees did not rebut the applicable presumption of irreparable harm. Further, the record fully supports the court's conclusions that Hydrologic has no adequate legal

remedy available to it, that it has a substantial likelihood of success on the merits of its breach of contract claim, and that granting the temporary injunction will serve the public interest.

In challenging the trial court's order, the former employees ask us to reweigh the evidence. That is not our role. *See Stevens v. Cricket Club Condo., Inc.*, 784 So. 2d 517, 518 (Fla. 3d DCA 2001) ("As an appellate court, it is not our function to reweigh the evidence but, rather, to view the record to determine if it contains competent and substantial evidence to support the conclusions of the trier of fact." (quoting *GNB, Inc. v. United Danco Batteries, Inc.*, 627 So. 2d 492, 493 (Fla. 2d DCA 1993))); *see also P & O Ports Fla., Inc. v. Cont'l Stevedoring & Terminals, Inc.*, 904 So. 2d 507, 510 (Fla. 3d DCA 2005) (citing *Stevens*, 784 So. 2d at 518-19).

We agree with the extensive factual and legal conclusions detailed in the trial court's order. Because Hydrologic satisfied the four prongs required for a temporary injunction, the trial court did not err in granting its motion. As a result, we affirm the order granting Hydrologic's motion for temporary injunction.

Affirmed.

MORRIS and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

6