DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CHRISTOPHER BARIANA, D.O.,

Appellant,

v.

FLORIDA HEALTH SCIENCES CENTER, INC.,
d/b/a TAMPA GENERAL HOSPITAL, and
TAMPA GENERAL MEDICAL GROUP, INC.,
a Florida corporation,

Appellees.

No. 2D2024-1355

_____

May 16, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Hillsborough County; Darren D. Farfante, Judge.

Kendra D. Presswood, Kiren Choudhry, and Gabriel T. Roberts of Scott
Law Team, LLC, Jupiter, for Appellant.

Joseph H. Lang, Jr., Allison O. Kahn, and Alana Zorrilla-Gaston of
Carlton Fields, P.A., Tampa, for Appellees.

MORRIS, Judge.

Christopher Bariana, D.O. (Dr. Bariana), appeals an order granting
a motion for temporary injunction filed by his former employer, Florida
Health Sciences Center, Inc., doing business as Tampa General Hospital,
and Tampa General Medical Group, Inc. (collectively referred to as

Tampa General).  We reverse the order granting the temporary injunction because the restrictive covenants on which it is based are unenforceable.

I.       Background

In June 2023, Dr. Bariana filed a complaint against Tampa General, asserting claims for breach of contract, declaratory judgment, and unlawful retaliation in violation of Florida's Whistleblower Act.[1]  On February 15, 2024, Dr. Bariana filed a second amended complaint, alleging a count for retaliation in violation of section 448.102(3), Florida Statutes (2022), a count seeking a declaratory judgment that his restrictive covenants are unenforceable, and a count for breach of contract.  Dr. Bariana alleged that he had been employed by Tampa General as a physician of thoracic surgery with a specialty in thoracic oncology and that he had executed an employment agreement on January 3, 2022, which contained restrictive covenants.  Dr. Bariana alleged that during his employment, he was subjected to various forms of mistreatment, including a physical battery by a supervisor.  He alleged that he reported the mistreatment on two occasions and that the mistreatment continued after both reports.  As a result, he resigned from his employment on April 28, 2023.

On February 23, 2024, Tampa General filed an emergency motion for temporary injunctive relief pursuant to section 542.335, Florida Statutes (2022), and Florida Rule of Civil Procedure 1.610.  Tampa General alleged that Dr. Bariana had begun employment as a thoracic surgeon at Bayfront Health Medical Group and that such employment

---

[1] Dr. Bariana also filed a motion for declaratory judgment in June 2023, seeking a declaration of his legal obligations under the employment agreement, but the trial court granted Tampa General's motion to strike on the basis that declaratory relief was not appropriate at that time.

violated his restrictive covenants with Tampa General.  The employment agreement between Dr. Bariana and Tampa General contains the following noncompetition and nonsolicitation provisions:

10.01  <u>Noncompetition</u>.  *Physician agrees that during the Term, and for a period of two (2) years following termination or Expiration of this Agreement, Physician shall not, directly or indirectly,* enter into, engage in, invest, own, operate, manage or *be employed by, or in any other way be affiliated with any person or entity that provides Thoracic Surgery medicine services within Hillsborough, Pinellas,* Manatee, Pasco, Polk, Citrus, Charlotte, DeSoto, Hardee, Hernando, Highlands, Sarasota and Lee Counties (the "Restricted Area") or otherwise provide Thoracic Surgery medicine services anywhere in the Restricted Area other than at the Hospital and other locations designated by the Hospital.  Physician acknowledges that the noncompetition covenants contained herein are meant to protect legitimate business interests of Employer and but for Physician agreeing to same, Employer would not have entered into this Agreement.

10.02  <u>Nonsolicitation</u>.  Physician agrees that during the Term, and for a period of two (2) years following termination or Expiration of this Agreement, Physician shall not:

(a)  Engage or participate in any effort or act to induce or solicit, directly or indirectly, any patients, employees, insurance companies, managed care plans, Employer's customers or other customers of the business conducted by Employer, or the Hospital, to withdraw, curtail or terminate their business relationship with Employer or for services competitive with those of Employer or the Hospital, or assist, induce, help or join any other person or company in doing any of the above activities.  Notwithstanding the foregoing, Physician may place general advertisements or engage in general solicitations that are not specifically targeted to Employer's patients or customers.

(b)  Solicit the services of any physician, consultant, or provider which renders services to, or for the benefit of, Employer's or the Hospital's customers, for Physician's use or benefit or for any other person's or company's use or benefit, or induce or help to induce any Physician, consultant or

3

provider that renders services to, or for the benefit of, Employer or the Hospital without Employer's prior written consent. Nothing herein would prohibit a formerly employed physician from making referrals to any other physician employed by Employer during or after the Term.

(Emphasis added.) Dr. Bariana opposed the motion for temporary injunctive relief, arguing, among other things, (1) that Tampa General had breached the employment agreement and (2) that under section 542.336, which applies specifically to physicians, the restrictive covenants are not supported by a legitimate business interest.

At the hearing on the motion for temporary injunctive relief, Tampa General presented the testimony of Dr. Bariana and Tyler Carpenter, Tampa General's Vice President of People and Talent. Dr. Bariana presented the testimony of Trina Espinola, M.D., Bayfront's Chief Medical Officer.

On May 6, 2024, the trial court granted, in part, Tampa General's motion for temporary injunctive relief. The trial court found that Dr. Bariana violated the restrictive covenants by "(a) accept[ing] employment with a direct competitor, Bayfront, which provides thoracic surgery medicine services in Pinellas County, in direct violation of the unambiguous restrictions set forth in his Employment Agreement with Tampa General and (b) solicit[ing] Tampa General's referring physicians and employees customers [sic]." In regard to Tampa General's legitimate business interests, the trial court went on to find that

> [t]he Employment Agreement protects Tampa General's considerable investment in its confidential and proprietary information including the information it maintains concerning its patients, such as patient contact information[] and patient needs. Tampa General has specific patients and geographic locations that are protectable by the restrictive covenants and has made substantial investment to develop and maintain its patient base, patient goodwill, and physician referral services.

4

> . . . .
>    . . . Tampa General has legitimate business interests justifying the restrictive covenants laid out in the Employment Agreement.  These include:
>    a.  Protection of valuable confidential business and professional information;
>    b.  Substantial relationships with specific prospective or existing patients and customers;
>    c.  The protection of patient, customer and client goodwill; and
>    d.  Protecting the value that Tampa General paid to build and market its thoracic surgery practice.

The trial court further found that Tampa General has a strong likelihood of success on the merits, that Tampa General has no adequate remedy on appeal, and that Tampa General "faces irreparable injury in the form of lost customers, damage to goodwill and further disclosure and use of its confidential information if the preliminary injunction is not issued." The trial court found that the public interest is served by a temporary injunction enforcing the restrictive covenants because "Tampa General has expended considerable financial resources in the development of its thoracic surgery practice."

The trial court rejected Dr. Bariana's defense that Tampa General breached the employment agreement, noting that it had "carefully reviewed the evidence presented at the [h]earing" and had considered the credibility of the live testimony from witnesses and the deposition of Dr. Bariana's supervisor.  The trial court also rejected, without explanation, Dr. Bariana's argument that the noncompete provision is invalid under section 542.336.

The trial court immediately enjoined Bariana from

> (a) working as a thoracic surgeon or operating for any competitor of Tampa General in Hillsborough and Pinellas Counties, specifically including Bay[f]ront; (b) soliciting customers, referral sources, or service providers with whom

5

Plaintiff Christopher Bariana, D.O. interacted with or had confidential information about while employed with either Tampa General; [(c)] sharing Tampa General[']s proprietary information; and [(d)] soliciting any employee or independent contractor, or in any other way modifying or altering their respective employment or business relationship with, Tampa General. Further, Plaintiff shall refrain from providing any Tampa General confidential information to Bayfront or any other competitor of Tampa General.

## II. Analysis

In reviewing the temporary injunction, we employ a hybrid standard of review: "To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." *Surgery Ctr. Holdings, Inc. v. Guirguis*, 318 So. 3d 1274, 1277 (Fla. 2d DCA 2021) (quoting *REV Recreation Grp., Inc. v. LDRV Holdings Corp.*, 259 So. 3d 232, 235 (Fla. 2d DCA 2018)). "A temporary injunction should only issue when 'the moving party has demonstrated (1) irreparable harm to the moving party unless the injunction issues, (2) unavailability of an adequate legal remedy, (3) a substantial likelihood of success on the merits, and (4) that the public interest is supported by the entry of the injunction.' " *Id.* (quoting *Atomic Tattoos, LLC v. Morgan*, 45 So. 3d 63, 64-65 (Fla. 2d DCA 2010)).

Section 542.335 permits the enforcement of a written restrictive covenant that is "reasonable in time, area, and line of business" and that is justified by "one or more legitimate business interests." § 542.335(1)(a)–(b).

The term "legitimate business interest" includes, but is not limited to:
1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.

6

3. Substantial relationships with specific prospective or existing customers, patients, or clients.
4. Customer, patient, or client goodwill associated with:
a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
b. A specific geographic location; or
c. A specific marketing or trade area.
5. Extraordinary or specialized training.

§ 542.335(1)(b). "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." *Id.*

No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.

§ 542.335(1)(i).

Section 542.336, titled "Invalid restrictive covenants," applies to physicians and provides:

A restrictive covenant entered into with a physician who is licensed under chapter 458 or chapter 459 and who practices a medical specialty in a county wherein one entity employs or contracts with, either directly or through related or affiliated entities, all physicians who practice such specialty in that county is not supported by a legitimate business interest. The Legislature finds that such covenants restrict patient access to physicians, increase costs, and are void and unenforceable under current law. Such restrictive covenants shall remain void and unenforceable for 3 years after the date on which a second entity that employs or contracts with, either directly or through related or affiliated entities, one or more physicians who practice such specialty begins offering such specialty services in that county.

7

We agree with Dr. Bariana that the trial court erred in rejecting his argument that the restrictive covenants are not supported by a legitimate business interest as provided in section 542.336.

At the hearing, Dr. Bariana testified that he performs "minimally invasive robotic surgery that's esophageal . . . and lung surgery, complex surgeries, chest wall resections," which are procedures that "[a] lot of places don't necessarily do." Bayfront employs another surgeon, but that surgeon "does open procedures" and is "not fully credentialed for" robotic surgery. He believed it was common knowledge among thoracic surgeons that there was a need in Pinellas County in the area of esophageal surgery. When Dr. Bariana was employed by Tampa General, he worked at a clinic in Pinellas County on approximately six occasions, rarely seeing more than one or two patients each time. He never performed surgeries for Tampa General in Pinellas County.

Dr. Bariana also presented the testimony of Dr. Espinola, Chief Medical Officer for Bayfront and a practicing otolaryngologist head and neck surgeon. She testified that Bayfront has two thoracic surgeons in Pinellas County, Dr. Bariana and the other surgeon, who is in the later stages of his career. The other surgeon "does very limited thoracic surgery on some very, very basic lung cancers and some media-style evaluations as well." Dr. Espinola testified that

> Dr. Bariana does the full spectrum of complex thoracic procedures and really practices with the clinical acumen that we would want our patients to be cared for in this day and age. He does mostly robotic lung cancer work, and media-style work, as well as what's called esophageal or for gut or esophageal surgery, and those surgeries are done for either lung cancer or esophageal cancer or other swallowing disorders that may require his expertise.

Dr. Espinola testified that prior to Dr. Bariana joining Bayfront, Bayfront did not have its own surgeon capable of performing such procedures.

8

Bayfront had the ability "to have a surgeon come down one day a month [from Orlando] to perform one or two procedures" and proctor the other surgeon. However, the other surgeon was not capable of performing those procedures by himself. Bayfront "had very limited ability to take care of those patients with lung cancer[,] and certainly very few patients with any type of esophageal injury or cancer were taken care of by" the other surgeon. Bayfront had "been looking for a thoracic surgeon for a very long period of time." Prior to Dr. Bariana joining in Pinellas County, Bayfront "had not had a thoracic surgeon with the skill and expertise necessary to take care of lung cancer patients and/or complicated esophageal injuries or cancers or tumors in over seven years." When asked if there were any other surgeons in Pinellas County who performed the same procedures as Dr. Bariana, Dr. Espinola testified that there is another surgeon in North Pinellas but that he "does no esophageal work to [her] knowledge and then limited, very, very early lung cancer work."

Dr. Espinola was asked about the specific needs for Dr. Bariana's services in Pinellas County, and she testified as follows:

> Our community is . . . very diverse, but also very, very committed to staying in our community that [our] patients of the Pinellas County Health Department or the free clinic have no access to care outside of South Pinellas. There's no payment, and . . . those are patients that don't have the ability to have a lot of transportation either to remote areas, whether it be Clearwater, which is actually, I think, further than Tampa is. So those patients—and I take care and share a number of those patients because a lot of patients that have head and neck cancer also have lung cancer.
> So those patients have no access to any care and their care is horribly delayed or never ever received if they receive it in our county.

Dr. Espinola testified that "at least 30 or 40 percent of the population that we take care of at Bayfront [is] . . . in a financial situation where

9

they would not be able to afford" to travel to Tampa hospitals for their care.

Dr. Espinola explained that prior to hiring Dr. Bariana, Bayfront would bring over a surgeon from Orlando who would perform procedures on approximately two patients a month but that this practice "delayed patient care and accelerated . . . poor prognostic features for patients, i.e., the . . . lung nodules or the lung cancer would grow, possibly metastasize and spread." Dr. Espinola testified that if Dr. Bariana is not able to work at Bayfront,

> there will again be delay in care. Lung cancer patients will have advanced disease when they're finally able to receive their case because there's only a limited amount of time that [Bayfront] can get [the Orlando surgeon] to come back from Orlando because he's busy taking care of his patients in . . . Orlando, and certainly, esophageal injuries will either not be taken care of or will have to be shipped to Tampa General.

She testified that "delay in care when we're performing cancer procedures is really not something that any clinician wants to see for their patients."

Through the testimony set forth above, Dr. Bariana demonstrated that the restrictive covenant is not supported by a legitimate business interest, according to section 542.336. As Dr. Bariana is the only physician who performs his specialized procedures in Pinellas County, Dr. Bariana "practices a medical specialty in a county wherein one entity employs or contracts with . . . all physicians who practice such specialty in that county." *Id.* There was no testimony offered by Tampa General that any other physicians practice Dr. Bariana's specialty in Pinellas County. Therefore, based on the plain language of the statute, the "restrictive covenant entered into with" Dr. Bariana, which prevents him from providing his specialized services in Pinellas County, "is not supported by a legitimate business interest." The legislature found that

10

"such covenants restrict patient access to physicians [and] increase costs," *see id.*, and those findings are supported by the testimony offered by Dr. Espinola at the hearing in this case.

We recognize that the entity that employs or contracts with Dr. Bariana in Pinellas County is Bayfront and that the restrictive covenants at issue are between Dr. Bariana and Tampa General. However, the restrictive covenants with Tampa General prevent Dr. Bariana from practicing in Pinellas County, and the plain language of the statute does not require the restrictive covenant to be with the entity that employs the physician in the county. *See KMG Props., LLC v. Owl Constr., LLC*, 393 So. 3d 240, 247 (Fla. 2d DCA 2024) ("The interpretation of a statute begins 'with the plain meaning of the actual language' the statute employs." (quoting *Nat'l Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 192 So. 3d 498, 504 (Fla. 2d DCA 2016))). And the stated intent of the statute is to avoid restricting patient access to physicians and increasing costs.[2] *See id.* ("It is beyond cavil that 'legislative intent is determined primarily from the statute's text.' " (quoting *Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 198 (Fla. 2007))). Regardless of which entity was employing him at the time, Dr. Bariana is the only physician in Pinellas County qualified to perform certain thoracic procedures in Pinellas County, and a restrictive

_____

[2] Section 542.336 was adopted in 2019. No Florida cases have addressed it yet. One federal court has considered the statute, stating that "[s]ection 542.336 declares that, when a particular entity employs or contracts with all physicians practicing a given specialty in a given county, any noncompete agreements between that entity and those physicians are void." *21st Century Oncology, Inc. v. Moody*, 402 F. Supp. 3d 1351, 1356 (N.D. Fla. 2018). But the entity in that case had employed "all nine of the radiation oncologists practicing in Lee County, Florida, making Plaintiff the only provider of radiation oncology services in that county." *Id.* at 1360. Thus, the federal court was not presented with facts similar to ours.

11

covenant that prevented him from doing so "is not supported by a legitimate business interest" and is "void and unenforceable." *See id.*[3]  In its order, the trial court noted that it had heard the testimony of Dr. Espinola, but the trial court erred in overlooking or disregarding the unrefuted evidence that Dr. Bariana is the only physician who provides necessary specialized services in Pinellas County.

Even if section 542.336 were not applicable, the evidence clearly demonstrated that the agreement's restrictions on Dr. Bariana's practicing of his specialized procedures in Pinellas County for two years violates public policy.  Section 542.335(1)(i) provides that a restrictive covenant may be unenforceable on the ground that it violates public policy if "such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint."  The trial court found that the public interest is served by enforcing the restrictive covenants because "Tampa General has expended considerable financial resources in the development of its thoracic surgery practice."  The trial court erred in concluding that Tampa General's business interests were

_____

[3] The statute also provides that the restrictive covenant "shall remain void and unenforceable for 3 years after the date on which a second entity that employs or contracts with, either directly or through related or affiliated entities, one or more physicians who practice such specialty begins offering such specialty services in that county." § 542.336, Fla. Stat. (2022).  However, the restrictive covenants in this case only restricted Dr. Bariana for two years.  We note that the order of injunction enforces the restrictive covenants "until final disposition of this action or further Order of this Court modifying or terminating this Temporary Injunction."  But we assume, based on the language of the agreement, that the restrictive covenants expired on April 27, 2025, two years after Dr. Bariana terminated his employment.

12

not substantially outweighed by the need for specialized medical services in Pinellas County. As discussed above, Dr. Bariana demonstrated at the hearing that there is no other physician in Pinellas County who is able to regularly perform his specialized procedures and that without Dr. Bariana's services, patient care in Pinellas County is significantly delayed, leading to accelerated poor prognoses for patients, i.e., cancer growth and metastases. *See Lloyd Damsey, M.D., P.A. v. Mankowitz*, 339 So. 2d 282, 283 (Fla. 3d DCA 1976) (holding that restrictive covenant was "unduly harsh and oppressive" in part because "[t]he testimony . . . revealed a compelling need for defendant's services as a surgeon in the area and enforcement of the covenant would jeopardize the public health of the community"); *cf. Joseph Spine, P.A. v. Moulton*, 346 So. 3d 154, 162 (Fla. 2d DCA 2022) (holding that "the trial court's brief mention of protecting patients' continuity of care does not explain why this concern substantially outweighs enforcement of the restrictions" where the physician "failed to present evidence that patients in this geographic area are underserved or otherwise unable to obtain the healthcare he provides"). The public health of Pinellas County would be jeopardized by the enforcement of the restrictive covenants, and this public policy concern substantially outweighs Tampa General's interests.

In conclusion, the trial court erred in enforcing the restrictive covenants and in granting Tampa General's motion for temporary injunction for the reasons explained above. We need not address Dr. Bariana's remaining arguments. We reverse the order granting the temporary injunction and remand for proceedings consistent with this opinion.

Reversed and remanded.

13

LABRIT, J., Concurs.
ATKINSON, J., Dissents with opinion.


ATKINSON, Judge, Dissenting.

I respectfully dissent. Section 542.336 is directed at specific "specialt[ies]" practiced by physicians—not particular services provided or procedures performed by physicians, which was the focus of Dr. Bariana's argument against enforcement of the restrictive covenant in this case. *See* § 542.336, Fla. Stat. (2022) ("A restrictive covenant entered into with a physician who is licensed under chapter 458 or chapter 459 and who practices a medical *specialty* in a county wherein one entity employs or contracts with, either directly or through related or affiliated entities, all physicians who practice such *specialty* in that county is not supported by a legitimate business interest." (emphasis added)); *see also* § 459.0152, Fla. Stat. (2022) ("An osteopathic physician licensed under this chapter may not hold himself or herself out as a board-certified *specialist* unless the osteopathic physician has successfully completed the requirements for certification by the American Osteopathic Association or the Accreditation Council on Graduate Medical Education and is certified as a *specialist* by a certifying agency approved by the board. However, an osteopathic physician may indicate the *services* offered and may state that his or her practice is limited to one or more types of *services* when this accurately reflects the scope of practice of the osteopathic physician." (emphasis added)). And rather than requiring a trial court to affirmatively recognize public policy that *supports* enforcement of a restrictive covenant before enforcing it, section 542.335 requires that a trial court "specifically" "articulate[]" public policy that the contract *violates* and find "that the specified public policy

14

requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint" before the court may "*refuse enforcement* of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy." § 542.335(1)(i) (emphasis added) (providing that without the specific articulation of public policy "that the contract violates" and the requisite weighing against the need to protect the legitimate business interest, "[n]o court may refuse enforcement" based on a violation of public policy); *see also* § 542.335(1)(j) ("A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.").

Additionally, a fair reading of the language of section 542.336 does not support a necessary premise of the majority's analysis of that statute—that it does not matter whether the entity employing or contracting with all physicians practicing a specialty in a county was the one with whom the physician "entered into" the restrictive covenant. *See* § 542.336. For section 542.336 to apply, there must be a physician who practices a medical specialty in a particular county, and there must be an entity that directly or indirectly employs or contracts with *all* physicians who practice such specialty in that county. *See id.* That physician and that entity must both be the parties to the restrictive covenant because the statute presupposes that the physician entering into the restrictive covenant is practicing the same specialty as the *one* entity employing or contracting with all physicians practicing that specialty in that county—so, if it were another entity, there would be *two*

15

such entities, rendering the statute meaningless and ineffectual.  *See Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 947 (Fla. 2020) (recognizing that "arriv[ing] at a 'fair reading' of the text . . . involv[es] 'faithful reliance upon the natural or reasonable meanings of language and choosing always a meaning that the text will sensibly bear by the fair use of language' " (first quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012); and then quoting Frederick J. de Sloovère, *Textual Interpretation of Statutes*, 11 N.Y.U. L.Q. Rev. 538, 541 (1934))).  Moreover, according to Dr. Bariana's theory of the case, to the extent there were any physicians *at all* practicing what he claims to be the relevant "medical specialty" in Pinellas County prior to his employment with Bayfront in violation of the restrictive covenant, none of them were employed by or contracted with Tampa General.  Dr. Bariana himself testified that when he was employed by, and entered into a restrictive covenant with, Tampa General, he did not practice what he claims to be the relevant "medical specialty" in Pinellas County.  And to the extent the testimony supports that an Orlando physician sometimes practiced the alleged "medical specialty" in Pinellas County, he contracted with Bayfront, not Tampa General.

The language of section 542.336 prevents an entity from entering into an enforceable restrictive covenant with a physician practicing a medical specialty when that entity is the only one that employs or contracts with physicians practicing that specialty in a county—thereby preventing such an entity from eliminating all in-county competition in that specialty through the use of restrictive covenants with physicians practicing that specialty.  But pursuant to Dr. Bariana's theory of the case and the testimony he adduced to support it, Dr. Bariana was not a

16

physician "who practice[d]" what he contends is the salient "medical specialty" in Pinellas County when he "entered into" the "restrictive covenant." *See* § 542.336. This fact alone undermines his and the majority's conclusion that the restrictive covenant is unenforceable under section 542.336, even leaving aside the fact that there was no evidence that *Tampa General*—the "entity" with whom he "entered into" the restrictive covenant—employed "all [the] physicians who practice[d]" the purported "medical specialty" in Pinellas County. *See id.*

I would affirm the order granting the injunction.

———————————————

Opinion subject to revision prior to official publication.

17